674 A.2d 217

COMMONWEALTH of Pennsylvania, Appellee,

v.

Junior THOMPSON, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 24, 1995.

Decided March 28, 1996.

Norris E. Gelman, Philadelphia, Marcelle Benjamin, for appellant.

Catherine Marshall, Hugh J. Burns, Jr., Philadelphia, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This case comes before the Court on appellant's claim that trial counsel was ineffective for failing to object to the instructions given by the trial court in its final charge to the jury. Appellant asserts that the charge as given was deficient in two specific areas: failure to include a no adverse inference instruction [1] and failure to advise the jury that appellant could be convicted of first degree murder as an accomplice only if appellant possessed the specific intent to kill. The Superior Court rejected appellant's claims of ineffectiveness and affirmed the judgement of sentence. For the reasons that follow we affirm the decision of the Superior Court.

---

1. The no adverse inference instruction, is contained in the Pennsylvania Suggested Standard Criminal Jury Instructions as follows:

    3.10A (Crim) *DEFENDANT'S FAILURE TO TESTIFY NOT EVIDENCE OF GUILT*

    It is entirely up to the defendant in every criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt from the fact that the defendant did not testify.

    Appellant additionally argues that the no adverse inference instruction could not be omitted from the court's charge to the jury absent an express waiver by appellant. This issue will be more fully set forth in the body of the opinion.

Appellant was convicted by a jury of first degree murder, aggravated assault, possession of an instrument of crime, and two counts of criminal conspiracy. The facts relevant to those convictions establish that on the night of December 19, 1990, appellant and his co-conspirator, "Danny," pulled into a parking lot on the 700 block of North 46th Street in Philadelphia. Appellant and Danny exited from a black Camaro and approached a group of people walking on the sidewalk of North 46th Street. As they approached this group appellant handed Danny a gun. Danny pointed the weapon at the decedent, Vivian Smickle, and ordered him to lay face down on the sidewalk. Danny then shot Vivian Smickle twice in the back. The other people in the group: Laura Bickerstaff, Ainsworth Kerr and Yolanda Gilliam, immediately began to flee the scene upon Danny's order to Vivian to lay on the sidewalk. As the others were running away they heard more gunshots. According to the testimony of the three witnesses, it sounded as if more than one weapon was being fired as they fled the scene. Ainsworth Kerr was hit twice by gunfire as he fled. Laura Bickerstaff positively identified appellant as the man who handed Danny the gun immediately before the shooting. Ainsworth Kerr and Yolanda Gilliam positively identified appellant as the man who was standing next to Danny when Danny killed Vivian Smickle.

Police Officers Corley and Ashley heard the gunfire as they were patrolling nearby. The officers drove towards the sound and as they approached saw the black Camaro speed out of a parking lot on North 46th Street. The officers observed appellant, who was in the passenger seat, retract his hand, which was holding a gun, in the car through the car window. The officers pursued the Camaro. After a high-speed chase, the Camaro pulled over and appellant and Danny fled in opposite directions. The officers gave chase on foot. Appellant was apprehended, Danny was not.[2] A .30 caliber carbine, later identified by Laura Bickerstaff as the gun appellant handed Danny immediately before the shooting, was discovered under the seat of the passenger side of the Camaro. Both

2. As of the date of appellant's trial "Danny" had not been apprehended.

.30 caliber cartridges and 9 millimeter bullet casings were found at the scene of the shooting. Ballistics tests established that the .30 caliber cartridges found at the scene had been fired from the weapon discovered in the camaro. The ballistics expert also testified that the .30 caliber cartridges and the 9 millimeter bullets could not have been fired from the same weapon.

Following the jury's verdict, the trial court sentenced appellant to life imprisonment on the first degree murder charge, with concurrent terms of five to ten years on the remaining charges. The Superior Court affirmed the judgment of sentence. This Court granted appellant's petition for allowance of appeal.

As appellant's allegations of error are premised on ineffective assistance of counsel, we reiterate our oft-stated standard for reviewing such claims:

> To establish an ineffective assistance of counsel claim, appellant must first demonstrate that the underlying claim is of arguable merit; then, that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate appellant's interest; and, finally, that but for the act or omission in question, the outcome of the proceedings would have been different. Appellant bears the burden of proving all three prongs of this standard. If it is clear that appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met.

*Commonwealth v. Travaglia*, 541 Pa. 108, 118, 661 A.2d 352, 356–57 (1995). The standard under which this Court reviews claims of error regarding a jury instruction is also relevant to our inquiry into the merits of appellant's allegations as they arise in that context. That standard of review is:

> When evaluating jury instructions the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is

clearly, adequately, and accurately presented to the jury for its consideration.

\* \* \* \* \* \*

We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluating whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision.

*Commonwealth v. Prosdocimo*, 525 Pa. 147, 150, 154, 578 A.2d 1273, 1274, 1276 (1990).

With these standards in mind we begin our analysis of the allegation that counsel was ineffective in failing to either request a no adverse inference instruction or conduct a colloquy specifically waiving the instruction. Appellant asserts that the total absence of any reference to the no adverse inference instruction by counsel is per se reversible error. Appellant argues that the omission of the charge, in light of the fact that he did not testify, allowed the jury to assume guilt by virtue of his silence. Appellant further argues that the decision to seek or waive the charge is his alone and without a colloquy on the record setting forth his decision, error must be presumed.

This Court first addressed the importance of the no adverse inference instruction in *Commonwealth v. Lewis*, 528 Pa. 440, 598 A.2d 975 (1991). In *Lewis*, counsel for the defendant had requested that the jury be specifically instructed that they should draw no adverse inference from the defendant's failure to testify. The trial court acquiesced in this request. However, the trial court forgot to include the instruction in its final charge to the jury. When counsel pointed out this omission the trial court mistakenly replied that the charge had been given and refused to repeat same. The trial court had, however, omitted the charge. The defendant sought a new trial claiming that the omission prejudiced him as it emphasized his failure to testify in the minds of the jury. The Commonwealth argued that the error in omitting the charge was harmless. This Court held that omitting the charge *when*

*requested* could never be harmless. *Id.* at 453, 598 A.2d at 981.

This Court found that the no adverse inference instruction embodied the concept that one cannot be compelled to give evidence against oneself, which is at the heart of Article I, Section 9 of the Pennsylvania Constitution. The Court did not find the no adverse inference instruction to be a required instruction in all criminal cases, but concluded that *when requested* the charge must be given. As the instruction is not required in all criminal cases, we noted that the charge could be specifically waived in situations where the accused, for strategic reasons, sought to preclude any mention of his silence in the final jury instructions:

> We are mindful that, for strategical reasons, a defendant and his or her counsel may determine that defendant's right to remain silent under Article I, Section 9 is best served by requesting that a "no-adverse-inference" charge *not* be given to the jury, in order to avoid drawing attention to defendant's failure to testify. The "fundamental" right at stake here is the right not to be "compelled to give evidence against [oneself]" from which the "no-adverse-inference" rule derives. Thus, if defendant and his or her counsel determine that the fundamental right to remain silent is best served by not drawing attention to defendant's silence, the derivative right (i.e., the "no-adverse-inference" instruction), may be validly waived. In such cases, an explicit waiver by defendant is required.
>
> Although a defendant is free to make the choice whether to request, or waive, a "no-adverse-inference" charge prior to the trial judge instructing the jury, a defendant's change of heart after the jury has been charged will not be effective. *See, e.g., Commonwealth v. Danzy,* 225 Pa.Super. 234, 310 A.2d 291 (1973) (attempt to waive "no-adverse-inference" charge after the jury has been instructed is ineffectual). [emphasis original]

*Lewis,* at 455 n. 14, 598 A.2d at 983 n. 14.

Shortly after the decision in *Lewis,* this Court faced the question of whether a trial court's decision to override a

defendant's waiver of the no adverse inference instruction was reversible error. In *Commonwealth v. Edwards*, 535 Pa. 575, 637 A.2d 259 (1993), the defendant expressly requested that the charge be omitted. The trial court refused to honor the request and gave the charge over objection of the defendant. This Court found that the decision to override the express waiver was error. The Court went on to determine that given the facts in *Edwards*, the error was harmless.[3] However, the Court ruled prospectively that the decision of the defendant to waive the no adverse inference charge must be complied with, and to ignore an express waiver of the charge would from that day forward be reversible error.[4] The Court formed this prospective rule in order to avoid future confusion regarding the defendant's right to specifically omit the charge. *Id.* at 579–80, 637 A.2d at 261.

The Court next dealt with the no adverse inference instruction in the case of *Commonwealth v. Howard*, 538 Pa. 86, 645 A.2d 1300 (1994). In *Howard*, counsel asserted that he "meant" to request the instruction but forgot until after the jury had begun their deliberations. At that point the trial court refused to bring the jury back in order to specifically instruct them on that point. Shortly thereafter the jury returned with a verdict of guilty. On appeal the defendant asserted that counsel's admitted omission established ineffectiveness per se. This Court rejected that assertion, and instead held that the defendant therein, as in all ineffective-

---

**3.** The defendant in *Edwards* was discovered in an alcohol induced sleep in his recliner while his wife's body was found on the kitchen floor. The wife had been shot three times with a snub nosed .38, which was discovered next to the defendant. The defendant's socks and shoes had blood stains on them matching the blood type of his wife. There was no evidence of a break-in. The defendant's daughter testified that her parents had argued continuously the day before the body was discovered.

**4.** In *Commonwealth v. Rasheed*, 536 Pa. 567, 640 A.2d 896 (1994), this Court reviewed the same question as in *Edwards:* whether giving the charge over the defendant's express objection was error. However, as *Rasheed* was tried prior to the announcement of the per se reversible error rule in *Edwards*, a harmless error analysis was undertaken. This Court concluded that the giving of the charge in that case was not harmless a new trial was therefore awarded.

ness claims, must establish that he was prejudiced by the fact that the jury had not received the charge. As the defendant in *Howard* asserted that prejudice must be assumed by the failure of counsel to timely request the charge, without any further showing of how that failure had an actual adverse effect on the trial, this Court rejected the claim of per se ineffectiveness. *Id.* at 100, 645 A.2d at 1308.

■ This trilogy of cases, *Lewis, Edwards,* and *Howard,* offers the following guidance regarding the no adverse inference instruction: the charge accurately reflects the important legal maxim that silence is not evidence of guilt; the charge is not required; however, once a defendant has expressed a clear intent to either include or exclude the charge that intent must be carried out. In accordance with these principles we now turn to appellant's claim that his trial counsel was ineffective for failing to either request the no adverse inference instruction or obtain appellant's waiver of the instruction. As this claim is premised upon trial counsel's inaction, appellant must establish that he suffered prejudice as a result of counsel's failure to act to such a degree that absent counsel's error the outcome of the verdict would have been different. *Travaglia* at 116–20, 661 A.2d at 356–57.

Appellant herein fails to set forth any argument whatsoever as to how he was prejudiced by counsel's failure to request a no adverse inference instruction. In the instant case appellant did not testify. The Commonwealth presented three eyewitnesses to the shooting, one of whom testified that appellant handed Danny the gun used to murder the decedent. In addition, the Commonwealth presented the testimony of two police officers who apprehended appellant fleeing the scene after the shooting, and a ballistics expert who identified the gun found in the getaway car as the murder weapon. The defense at trial focused upon the fact that appellant was not the shooter, and attempted to dispute the circumstantial evidence regarding existence of a conspiracy to murder the decedent.

■ Given the nature of the evidence presented at appellant's trial the traditional concerns which prompt a request for, or a specific request to omit, the no adverse inference instruction are not present in this case. In contrast to the instant case, the situations which would prompt counsel to consider requesting or omitting a no adverse inference instruction normally arise where the testimony of the accused is vital to the nature of the defense asserted. In *Lewis*, the murder at issue occurred during a prison altercation involving numerous people. There the defense asserted was self-defense and/or mistaken identity created by the mob nature of the assault. In *Edwards*, there were only two people in the house at the time of the murder, one of them was dead and the other was in a drunken stupor with a gun next to him and his shoes stained with the victim's blood. In *Rasheed*, the charge was rape and the defense was consent. In each of these cases, the circumstances of the crime would heighten the jury's awareness of the defendant's failure to testify. We cannot find that such concerns arise from the circumstances of the shooting as presented in the case at bar. Nor has appellant alerted this Court to any particular reason why the absence of a no adverse inference instruction adversely affected the outcome of this case. Accordingly, we find that appellant has failed to establish prejudice. Therefore counsel, cannot be deemed ineffective for failing to request the no adverse inference instruction. *Travaglia*, at 118–20, 661 A.2d at 357.

■ Appellant does not end his argument here. In addition to alleging per se ineffectiveness by the failure to request the charge, appellant also asserts ineffectiveness on the part of trial counsel for failing to conduct a colloquy with appellant on the decision to waive the no adverse inference instruction. Appellant asserts that the decision to request or waive the charge must be made by the accused, as no such decision occurred herein, counsel must be presumed ineffective. However, as we have just stated, this case did not raise any reasonable basis alerting counsel that the no adverse inference instruction would be relevant to the jury's deliberations. As

the charge is not required in all cases where the defendant does not testify, we cannot place the burden on counsel to discuss an issue with his client that was not necessarily relevant to his case. Counsel is not required to discuss every nuance of the law with his client, only those aspects of the law relevant to the resolution of the case at hand. *See, Commonwealth v. Frometa*, 520 Pa. 552, 555 A.2d 92 (1989) (counsel not ineffective for failing to advise his client of the collateral consequences to a plea of guilty). Thus, we further find no merit to appellant's claim of ineffectiveness for failure of trial counsel to obtain an express waiver from appellant as to the no adverse inference instruction.

■ However, it is apparent to this Court that further elucidation for the trial bench and bar is required on the question of when a no adverse inference instruction is warranted. In order to finalize the endless argument as to when and how the subject instruction is to be given and if waived, how it is to be waived and, in light of the rule already established by this Court in *Edwards*, we find it necessary and prudent to take additional steps to ensure proper consideration of the ramifications of this particular instruction. Accordingly, we hold that from this day forward the no adverse inference instruction shall be given absent an *express* on the record colloquy by the defendant waiving the charge.

We now turn to appellant's second allegation of ineffectiveness; that the charge as given failed to adequately apprise the jury that appellant could be convicted of first degree murder as an accomplice only if he harbored a specific intent to kill the victim. Appellant relies upon *Commonwealth v. Huffman*, 536 Pa. 196, 638 A.2d 961 (1994) in arguing that the charge as given here failed to adequately set forth the legal standards for accomplice liability on first degree murder charges. Appellant's reliance upon *Huffman* is misplaced.

In *Huffman* the charge as given was an incorrect statement of the law. The charge in *Huffman* incorrectly advised the jury that they could find the defendant guilty of first degree murder if either he or his co-conspirator possessed the neces-

sary specific intent to kill at the time of the murder. In contrast to *Huffman*, the charge in the instant case correctly stated the law as to the liability of an accomplice in the commission of the crime. The pertinent portion of the charge from the case at bar, is as follows:

> I mentioned the word accomplice to you, I am also going to charge you on the concept called conspiracy. They sound a lot alike but there are distinctions. Who is an accomplice? You may find that the Defendant is guilty of a crime without finding that he personally performed the act or engaged in the conduct that is required to commit the crime.
>
> The Defendant is guilty of a crime if he's an accomplice of another person who commits the crime. He's an accomplice if with the intent to promote or facilitate the commission of the crime he either solicits, encourages, commands or requests the other person to commit it or he aids or agrees to aid or attempts to aid the other person in planning or committing it.
>
> You may find the Defendant guilty of the crime on the theory that he was an accomplice as long as you're satisfied beyond a reasonable doubt that the crime was committed and that the Defendant was an accomplice of the person who committed it.

(Notes of Testimony 11/4/91 at 26–27). This portion of the charge was preceded by the definitions of the different degrees of murder and the definition of specific intent which is required to find a person guilty of first degree murder. In fact the charge as given here is identical to the charge on accomplice liability recently approved by this Court in *Commonwealth v. Chester*, 526 Pa. 578, 613, 587 A.2d 1367, 1384 (1991), where the defendant was also convicted of first degree murder as an accomplice.

■ Appellant apparently reads our decision in *Huffman* as requiring that the legal concepts of accomplice liability and first degree murder be revealed to the jury by a set pattern of magic words. Appellant is in error. The charge to the jury must clearly and completely advise the jury of the law as it pertains to their resolution of the case before them. The

manner in which the jury is so advised is a matter left to the discretion of the trial court. *Commonwealth v. Stokes*, 532 Pa. 242, 251, 615 A.2d 704, 708 (1992). The trial court is not required to deliver the charge within a prescribed pattern. The charge as given in the instant case adequately and correctly established the requirements which the jury must find in order to render a verdict on the issue of accomplice liability for first degree murder. Accordingly, as the charge was legally correct, counsel was not ineffective for failing to object to the charge.

For the reasons stated herein, we find that trial counsel was not ineffective. The decision of the Superior Court is affirmed.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.