COMMONWEALTH of Pennsylvania,
Appellee,

v.

Ford HOWARD, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 22, 1999.

Filed March 23, 2000.

Paul J. Hetznecker, Philadelphia, for appellant.

Catherine Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before McEWEN, President Judge, FORD ELLIOTT, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

¶ 1 This is an appeal from an order denying a request for collateral relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. We affirm.

¶ 2 From December 6–28, 1985, the Honorable Albert Sabo presided over a jury trial in the case underlying the present appeal. The jury found Appellant, Ford Howard, guilty of first degree murder, criminal conspiracy and possession of an instrument of crime (PIC),[1] and subsequently imposed a sentence of life imprisonment on the murder conviction. On September 3, 1986, Judge Sabo denied Appellant's post-trial motions and formally imposed the sentence of life imprisonment for the murder, with consecutive sentences of ten (10) to twenty (20) years of incarceration for conspiracy, and two and one-half (2–1/2) to five (5) years on the PIC conviction. Appellant filed a petition for reconsideration of sentence which Judge Sabo granted in part. Upon reconsideration, the Trial Court reduced the conspiracy sentence to five (5) to ten (10) years and suspended the sentence for the PIC charge.

¶ 3 The Superior Court affirmed the judgment of sentence on direct appeal and the Pennsylvania Supreme Court denied *allocatur* on April 5, 1989. *Commonwealth v. Howard*, 375 Pa.Super. 43, 543 A.2d 1169 (1988), *appeal denied*, 522 Pa. 573, 559 A.2d 35 (1989). Appellant filed his first petition seeking collateral relief on December 24, 1996. Judge Sabo appointed counsel for Appellant, and an amended petition was filed on Appellant's behalf on

---

1. Respectively, 18 Pa.C.S.A. §§ 2502(a), 903, and 907.

June 30, 1997. On October 9, 1997, Judge Sabo entered an order pursuant to Rule of Criminal Procedure 1507 evincing his intention to dismiss the amended petition without a hearing. Subsequently, on December 1, 1997, the PCRA Court denied relief.

¶ 4 Appellant lodged a timely notice of appeal with this Court on December 24, 1997. Judge Sabo is no longer sitting on the Court of Common Pleas for Philadelphia County. *See* Docket entry dates July 2, 1998. He did not file a PCRA Court Opinion prior to leaving the bench. *Id.* We initially remanded the case for an evidentiary hearing concerning Appellant's allegations of prosecutorial misconduct. However, we subsequently granted panel reconsideration on the basis of a petition in which the Commonwealth more clearly explained its position than it did in its original brief.[2] In the present appeal, Appellant raises two issues, with seven subparts, for our consideration:

I. PROSECUTORIAL MISCONDUCT

  A. Whether the prosecutor committed misconduct by failing to disclose to appellant's counsel that the crucial witness against him had (1) been granted immunity from prosecution; (2) been a suspect in this homicide; and (3) had a long standing relationship as an informant with the homicide division of the Philadelphia Police Department.

  B. Whether appellant's due process rights under the Pennsylvania Constitution and the Fourteenth Amendment of the United States were violated when the prosecutor committed misconduct by presenting the perjured testimony of Charles Harris and failing to correct that testimony.

  C. Whether the prosecutor committed misconduct by presenting rebuttal testimony supporting Charles Harris' reputation for veracity knowing that the immunity status had not been disclosed to defense counsel.

II. INEFFECTIVE ASSISTANCE OF COUNSEL

  A. Defense counsel rendered ineffective assistance of counsel for failing to raise the issue of prosecutorial misconduct for failing to disclose the Commonwealth's immunity agreement on direct appeal.

  B. Trial counsel rendered ineffective assistance for failing to move in limine and/or object to evidence of unrelated uncharged criminal activity by appellant.

  C. Trial counsel rendered ineffective assistance informing the jury that co-defendant Craig Murphy had previously been convicted of first degree murder based on the evidence they were about to hear.

  D. Counsel rendered ineffective assistance for failing to object to the trial court's instruction on accomplice liability.

Appellant's Brief at 7.

¶ 5 Before addressing these claims, we shall explain the facts of the case, as recounted by this Court on direct appeal:

  Five men conspired in the murder of James "Muscles" Reynolds, who died in the early morning hours of September, 1983, of seven gunshot wounds, three to the head and four to the body. The five men involved in the murder include: Craig Murphy (who was separately tried and convicted of first degree murder), appellant, Rodney Wells, Esau Burroughs and Morris Willis. The latter four were tried together subsequent to Murphy's trial. The murder was motivated by the victim's drug dealings with

---

**2.** We explicitly note that the Commonwealth was not permitted thereby either to raise new issues or to present a responsive theory not present, albeit in less articulate form, in its initial appellate brief.

Murphy, who was characterized as the principal in the shooting. Murphy, appellant and Wells actually shot the victim, and Burroughs was involved in planning the murder, as was Willis, who arranged to have the victim meet his executioners in a deserted playground in the early morning of September 1, 1983.

Commonwealth witness Keith Johnson testified that at approximately 10:30 p.m. on August 31, 1983, he overheard Murphy talking with appellant, Burroughs and Wells in the Motorcycle Club in Philadelphia. The four were plotting the manner in which they were going to murder a man referred to as Muscles. Murphy and appellant displayed their guns to Wells and Burroughs. Johnson heard appellant say "I'm going to kill the [expletive]" and "[I'm] not going to be playing." N.T., 12/11/85 vol.2, at 6–8. Murphy, appellant and Wells then departed, and when Johnson asked Burroughs if the three actually intended to shoot someone, the latter answered affirmatively. Murphy, appellant and Wells returned to the club at 2:00 a.m., displaying their guns. Johnson overheard appellant say to Burroughs that he had shot the victim in the head. All four left after learning that police were investigating the crime.

Commonwealth witness Bernard Williams testified that he had gone to the Motorcycle Club with Murphy early in the evening of the murder and had left that club to go to a different club across the street. Williams was leaving the second club just as Murphy, appellant and Wells were leaving the Motorcycle Club. Murphy told Williams to accompany the three men, and Williams complied. During the car ride, Williams heard Murphy discussing drug matters which he had "to take care of" with Muscles and appellant. N.T., 12/16/85, at 223–225. The four men went to the vicinity of the playground where the shooting occurred. Wells and appellant exited the car, which Murphy then parked. Murphy left Williams in the car, and Williams heard gunshots several minutes later. Soon afterward, Murphy returned to the car, informing Williams that he had "taken care of business." N.T., 12/17/85 vol. 1, at 44, 46. Williams testified that he was never informed of the murder plot.

The victim's wife, Sonia Mackie, testified that at around midnight on August 31, 1983, she received a call from co-defendant Willis, who informed her that she and Muscles were to meet him in the playground where the shooting later occurred in order to pick up drug money. Mackie decided to stay home while Muscles left for his rendezvous with death. Willis subsequently telephoned Mackie with the news of Muscles' death. Sometime later, appellant admitted to Mackie that he was present at the murder, showing her the gun that he had used and admitting that Murphy had ordered him to kill her.

*Commonwealth v. Howard*, 543 A.2d at 1171–1172.

¶ 6 An appellate court's standard of review of an order granting or denying post conviction relief is limited to examining whether the PCRA Court's determination is supported by evidence of record and whether it is free of legal error. *Commonwealth v. Albrecht*, 554 Pa. 31, 41 n. 3, 720 A.2d 693, 698 n. 3 (1998). When there is support of record for the post conviction court's credibility determinations, appellate courts are bound by the PCRA Court's rulings thereon. *Commonwealth v. Abu–Jamal*, 553 Pa. 485, 514, 720 A.2d 79, 93 (1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999).

To be eligible for post-conviction relief, an appellant must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the errors or defects listed in 42 Pa.C.S. § 9543(a)(2), and that the issues he raises have not been previously litigated. An issue has been previously litigated if the highest appellate court

in which an appellant could have had review as a matter of right has ruled on the merits of the issue, or the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa.C.S. § 9544. If the allegations of error have not been finally litigated, the PCRA also requires that an appellant demonstrate that these allegations of error have not been waived or that, if waived, the conditions in either 42 Pa.C.S. § 9543(a)(3)(ii) or (iii) (amended 1995) have been met.

*Albrecht*, 554 Pa. at 41, 720 A.2d at 698 (footnote omitted).

¶ 7 Appellant's first three arguments center on the contention that the prosecutor committed misconduct by allegedly failing to disclose evidence concerning the reliability and credibility of Commonwealth witness Charles Harris (a/k/a Charles Davis). Under Appellant's theory, the full extent of the bargain between the Commonwealth and Mr. Harris was never revealed to trial counsel, who thus could not effectively impeach the Commonwealth's alleged "star witness" against Appellant. According to Appellant, the crux of the difficulty is that the Trial Court provided Appellant only with edited portions of the transcripts from a proceeding before a county investigating grand jury in another matter which also implicated Appellant. Mr. Harris was one of the witnesses before the investigating grand jury.

¶ 8 Appellant specifically contends that Mr. Harris was granted use immunity from prosecution in the other matter in exchange for his testimony before the investigating grand jury, but that the Commonwealth never revealed this fact to trial counsel. Appellant further complains that during Appellant's trial, Mr. Harris perjured himself by failing to admit that he had been granted use immunity from prosecution when questioned on this point, and that the Commonwealth did nothing to correct the effect of the perjured testimony. Finally, Appellant avers that the prosecutor compounded this error by presenting rebuttal testimony supporting Mr. Harris' reputation for veracity knowing that the immunity status had not been disclosed to defense counsel and that Mr. Harris lied about this fact while under oath.

¶ 9 The first question we must answer is whether these arguments are "previously litigated" for the purposes of the PCRA. The record in this case indicates that the county grand jury in question was investigating the criminal organization run by Appellant's associate, Craig Murphy. Mr. Harris testified on several occasions concerning the organization's drug activities. At the time of the trial underlying the present appeal, Mr. Murphy, Appellant, and their other associates had not yet been tried on the pending drug, murder, and racketeering charges forming the subject matter of the grand jury's investigation. Consequently, Judge Sabo conducted an *in camera* review of the grand jury transcripts and released an edited portion to the defense, omitting references to other investigations unrelated to the trial underlying the present appeal. As Judge Sabo explained in the Trial Court opinion filed pursuant to Appellant's direct appeal:

Defendant Howard contends that the trial court erroneously denied his defense counsel an opportunity to review the notes of testimony of various Commonwealth witnesses before the investigating grand jury which allegedly related to the subject matter of the instant criminal charges. Defendant's claim is without merit.

At trial, the Commonwealth presented the testimony of Alfred Keith Johnson, Officer Walter Crawley, Sonia Mackie and Charles Harris. These witnesses had previously testified before the County Investigating Grand Jury of April 26, 1984. Following the direct examination of each of these witnesses, defense counsel requested a copy of all transcripts of prior testimony before the grand jury.

In each instance, the Court conducted an *in camera* review of the grand jury

transcripts, and released to the respective defense attorneys redacted copies of the witness's former testimony. Deleted from the redacted copies were all references to other investigations which were unrelated to the criminal charges for which defendants were on trial.

Trial Court Opinion, filed 5/29/87, at 23.

¶ 10 Judge Sabo explicitly held that he provided trial counsel with "all *relevant* portions of the former testimony." *Id.* at 24 (emphasis in original). The docket sheet for the Court of Common Pleas indicates that the transcripts from the county grand jury proceeding were transmitted to this Court on direct appeal. *See* Docket Entry for May 27, 1987 (content of record transmitted to Superior Court). We upheld the Trial Court's action in giving trial counsel the edited transcripts, and found that Judge Sabo had provided counsel with adequate tools for cross-examining all the witnesses, including Mr. Harris. *Howard*, 543 A.2d at 1172.

■ ¶ 11 An issue is "previously litigated" for purposes of the PCRA if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue, or if it has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa.C.S.A. § 9544(a)(2) and (3); *Commonwealth v. Pirela*, 556 Pa. 32, 40, 726 A.2d 1026, 1030 (1999), *cert. denied*, — U.S. ——, 120 S.Ct. 804, 145 L.Ed.2d 677 (2000). It is apparent from the certified record in this case, that Appellant is foreclosed from challenging Judge Sabo's prior ruling that he provided trial counsel with accurate and adequate transcriptions of the relevant testimony of Mr. Harris before the grand jury. Because this Court held that Judge Sabo did indeed provide Appellant with all the information necessary to effectively cross-ex-

amine Mr. Harris, we conclude that Appellant's argument is "previously litigated" insofar as it pertains to Judge Sabo's actions with regard to the grand jury transcripts. *See* 42 Pa.C.S.A. § 9543(a)(2) (precluding PCRA Court from considering claim decided on direct appeal).

¶ 12 However, contrary to the Commonwealth's assertions, the crux of the contentions in Appellant's PCRA petition is not that the **Trial Court** erroneously failed to provide the relevant material. Rather, Appellant now claims that the **Commonwealth violated its duty to disclose** the fact that Mr. Harris was granted use immunity from prosecution in the matters before the investigating grand jury "prior to his testimony in the instant case." Appellant's Brief at 13. The certified record indicates that this specific issue has not been litigated previously.

■ ¶ 13 Our next question is whether Appellant's claims must be deemed waived. An issue is waived under the PCRA if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post conviction proceeding. 42 Pa.C.S.A. § 9544(b). By Appellant's own admission, he knew of the immunity agreement no later than February 27, 1986. *See* Appellant's Brief at 14. Approximately two months after Appellant's trial concluded, the Honorable Juanita Kidd Stout conducted a proceeding concerning separately filed racketeering charges against Appellant. *Id.* Mr. Harris testified at this proceeding. *Id.* On cross-examination, Appellant's counsel exposed the immunity arrangement between Mr. Harris and the Commonwealth. *See* Appellant's Brief at 14–15 (quoting from the transcript of a proceeding conducted February 27, 1986).[3]

---

3. The certified record transmitted to this Court with the present appeal does not contain a transcript from any proceeding conducted on February 27, 1986. However, we accept Appellant's uncontested representa-

tions as to the testimony adduced on that date. We note additionally that the transcript from the February 27th proceeding was not transmitted to this Court on the occasion of Appellant's direct appeal. *See* Trial Court

¶ 14 The certified record in this case discloses that on January 9, 1986, trial counsel filed a motion for a new trial and/or arrest of judgment. That matter was still pending before Judge Sabo in February of 1986 when the hearing occurred during which Appellant learned that the Commonwealth granted Mr. Harris immunity before the investigating grand jury. Judge Sabo did not rule on Appellant's post verdict motion until September 3, 1986, the date on which he imposed sentence. Appellant subsequently filed a post sentence motion on September 8, 1986, which did not discuss whether the Commonwealth committed prosecutorial misconduct. Nor did Appellant raise the question of alleged prosecutorial misconduct on the occasion of his direct appeal. Clearly, Appellant could have raised these allegations on direct appeal, but failed to do so. We must therefore conclude that, pursuant to section 9544(b) of the Act, Appellant has waived his right to present his "prosecutorial misconduct" claims in the context of the PCRA petition underlying this appeal.

¶ 15 However, even a waived issue may be considered by a PCRA Court if one of the conditions in section 9543(a)(3)(ii) or (iii) has been met. *Albrecht, supra.* Here, Appellant contends that all prior counsel were ineffective for failing to raise and preserve his claims concerning the purported prosecutorial misconduct of Roger King, Esquire. Properly nested allegations of ineffectiveness may be sufficient to overcome waiver if the merits of the claim permit relief. *See Commonwealth v. Allen,* 557 Pa. 135, 143–144, 732 A.2d 582, 587 (1999) (waiver of a previously unlitigated issue is excused under the PCRA if the petitioner can demonstrate that all prior counsel were ineffective for failing to pursue the issue).

¶ 16 When a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, he must prove by a preponder-

ance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel "which in the circumstances of the particular case so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Stevens,* 559 Pa. 171, 180, 739 A.2d 507, 512 (1999). The Supreme Court has interpreted this provision in the PCRA to mean that the petitioner must show: (1) that the claim of counsel's ineffectiveness has merit; (2) that counsel had no reasonable strategic basis for his action or inaction; and (3) that the error of counsel prejudiced the petitioner, *i.e.,* that there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different. *Id.* In evaluating such a claim, we presume that counsel is effective, and it is the burden of Appellant to show otherwise. *Id.*

¶ 17 We shall thus proceed to a consideration of the substantive arguments underlying Appellant's ineffectiveness claims. Appellant first contends that the Commonwealth's failure to disclose the grant of immunity to Mr. Harris in the county grand jury proceedings constituted a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which requires the prosecution to release to the defense all material evidence tending to absolve a defendant. The Pennsylvania Supreme Court has interpreted *Brady* as applying to allegations such as those Appellant has presented in the instant case:

> In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held "that suppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196. Furthermore, "[w]hen the 'reliability of a given witness may well be determinative of

Docket, 5/27/87, List of Notes of Testimony    Transmitted to Appellate Court (Entry D–26).

guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). *Commonwealth v. Moose*, 529 Pa. 218, 231–32, 602 A.2d 1265, 1272 (1992). Pennsylvania cases uniformly hold that the prosecution does not violate *Brady* when it fails to provide the defense with evidence that it does not possess and of which it is unaware during pre-trial discovery. *Commonwealth v. Montgomery*, 533 Pa. 491, 496–497, 626 A.2d 109, 112 (1993). However, when the prosecutor deliberately withholds material evidence during trial that would be discoverable under Rule of Criminal Procedure 305, one can argue that the Rules of Discovery have been violated or, inferentially, that the Commonwealth has engaged in bad faith. *Id.* at 497, 626 A.2d at 112. *See* R.Crim.P. 305(D) (continuing duty to disclose additional evidence upon discovery).

¶ 18 In *Moose*, the Supreme Court opined that, under *Brady*, the Commonwealth must disclose material evidence requested by the defense that might affect the outcome of the trial. *Moose*, 529 Pa. at 233, 602 A.2d at 1272. However, as this Court stated in *Commonwealth v. Galloway*, to be entitled to a new trial under *Brady* and its progeny, missing evidence affecting a witness' credibility must be **material**. *Id.*, 433 Pa.Super. 222, 229, 640 A.2d 454, 457 (1994), *appeal denied*, 538 Pa. 666, 649 A.2d 668 (1994), *cert. denied*, 514 U.S. 1039, 115 S.Ct. 1407, 131 L.Ed.2d 294 (1995).

Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probabili-

ty" is a probability sufficient to undermine confidence in the outcome.

*Id.* (footnote omitted).

¶ 19 Interpreting *Moose*, this Court also has held that the apparent motivation of a "significant witness" for the Commonwealth is relevant and must be disclosed by the prosecution. *Commonwealth v. Johnston*, 434 Pa.Super. 451, 458–462, 644 A.2d 168, 172–73 (1994), *appeal denied*, 539 Pa. 646, 651 A.2d 534 (1994). The Commonwealth's failure to disclose information pertaining to the entirety of its bargains with a "significant witness" constitutes a clear violation of the *Brady* doctrine. *Id.* Our first inquiry, therefore, is whether Mr. Harris must be considered a "significant witness" on behalf of the Commonwealth. Secondarily, we must determine whether the nondisclosure of a grant of use immunity to him must be deemed "material" evidence in the sense that its omission creates a "reasonable probability" that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

¶ 20 While under oath, Mr. Harris indicated that he knew Appellant from "frequenting an office" which he maintained in the City of Philadelphia for the purpose of coordinating a cocaine distribution business, and from "different gambling establishments." N.T. Trial, 12/17/85, at 185, 199. Mr. Harris testified that the police informed him his car may have been used in the commission of a homicide. *Id.* at 228. He also stated that he had independent cause to believe Craig Murphy **might** have used the vehicle as a getaway car after killing "Muscles" Reynolds. *Id.* at 190, 215–18, 249.[4] However, Mr. Harris' testimony cannot be characterized as certain because he did not witness the killing, and he admitted that he did not know for sure whether his car was definitely implicated in the crime.

---

4.   Mr. Harris believed that his automobile may have been used as the get-away vehicle because the day after Mr. Reynolds' demise, Mr. Murphy returned the car with a few blood

streaks on the right hand passenger's seat and a half-full box of bullets in the glove compartment.

¶ 21 Although Mr. Harris' testimony comprises approximately fifty pages of trial transcript, fewer than ten pages contain any substantive testimony, *i.e.*, testimony concerning the fact that Appellant's associate Craig Murphy **might** have used Mr. Harris' automobile as a get-away vehicle. The bulk of Mr. Harris' testimony concerns the nature of his bargain with the Commonwealth to appear on behalf of the prosecution. The trial in this case lasted twenty-one days, and the transcripts alone comprise an entire carton of evidence. Under these circumstances, we find it impossible to agree with Appellant that Mr. Harris was a "star witness" or a "significant witness" for the Commonwealth. Even assuming (solely for the sake of this specific claim) that the Commonwealth did fail to disclose the entirety of its bargain with Mr. Harris, we cannot grant a new trial on the basis of a *Brady* violation covering the testimony of a minor witness who provided equivocal testimony that Appellant's associate **might** have borrowed his car to facilitate the commission of a crime. *See Galloway, supra.*

¶ 22 Furthermore, we cannot see that the missing information concerning Mr. Harris' alleged use immunity before the county investigating grand jury can be said to create a reasonable probability that the result of the trial would have been different had the defense been able to impeach the witness on this one specific point. The evidence of record shows that the jury was apprised of the following: (1) Mr. Harris had appeared before a special investigating grand jury; (2) he had been incarcerated on an unrelated matter and contacted a detective he knew in order to garner a favor and make bail in exchange for information on Appellant and Appellant's associates; (3) he was released on bail as a result of the information he provided; (4) he was relocated to a different community to protect him; and (5) he was promised that, in his pending trial on the charges unrelated to Appellant's case, the Commonwealth would inform the trial court of his assistance. N.T. Trial, 12/17/85, 190–209. Furthermore, defense counsel exhaustively cross-examined Mr. Harris on all these points. *Id.*, 209–246. Under these circumstances, we are unable to conclude that the underlying claim has arguable merit. Thus, we cannot conclude that trial counsel provided ineffective assistance in this regard.

¶ 23 In this context, Appellant also contends that all prior counsel were ineffective for failing to challenge the Commonwealth's alleged misconduct in adducing perjured testimony from Mr. Harris, and then deliberately bolstering his credibility by calling a rebuttal witness to testify as to Mr. Harris' reputation for veracity. The Pennsylvania Crimes Code defines the parameters of "perjury" as follows:

> A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is **material** and he does not believe it to be true.

18 Pa.C.S.A. § 4902(a) (emphasis added). Falsification is "material" if it "could have affected the course or outcome of the proceeding." *Id.*, § 4902(b). We have already concluded that Mr. Harris was a minor witness, who provided equivocal testimony concerning the fact that Mr. Murphy, and not Appellant, borrowed his automobile on the night of the victim's murder. Furthermore, we have explained why we believe that trial counsel's cross-examination of Mr. Harris was adequate to apprise the jury of his possible motivation to testify against Appellant and his co-defendants. Under these circumstances, we cannot conclude that Mr. Harris' misrepresentation (by omission) of one element of his "deal" with the Commonwealth was material to Appellant's conviction. Thus, we cannot find that this testimony constitutes "perjury" as that term is defined by Pennsylvania law.

952

¶ 24 We note, moreover, that Appellant's argument concerning the alleged prosecutorial misconduct with regard to Mr. Harris' testimony has been preserved in the form of an ineffectiveness claim. Our law is clear that an appellant cannot prevail on such a claim unless he demonstrates that he suffered "actual prejudice" from counsel's act or omission. *Commonwealth v. Rainey*, 540 Pa. 220, 228, 656 A.2d 1326, 1330 (1995), *cert. denied*, 516 U.S. 1008, 116 S.Ct. 562, 133 L.Ed.2d 488 (1995). To meet this standard, Appellant must show that a reasonable probability exists that "but for" counsel's action or inaction, the outcome of the proceeding would have been different. *Stevens*, 559 Pa. at 180–181, 739 A.2d at 512. In assessing a claim of ineffectiveness, when it is clear that Appellant has failed to meet the prejudice prong, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 541 Pa. 108, 118, 661 A.2d 352, 357 (1995), *cert. denied*, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996).

¶ 25 Even assuming, purely for the sake of argument, that Mr. Harris' testimony could be deemed perjured, we have already shown that he was a minor witness who provided equivocal testimony concerning a point that was merely tangential to Appellant's conviction. Under these circumstances, we cannot possibly conclude that the outcome of the proceeding would have been different if Mr. Harris had disclosed the entire bargain between himself and the Commonwealth. Thus, we cannot find all prior counsel ineffective for failing to uncover any alleged misconduct on the part of the prosecutor with regard to Mr. Harris' testimony. We therefore decline to provide relief pursuant to this claim.

¶ 26 Part "II" of Appellant's brief comprises four allegations that all prior counsel were ineffective for neglecting to raise and preserve various errors which purportedly occurred during trial. We have already considered and rejected the merits of Appellant's first substantive claim in this regard, which concerns counsel's alleged failure to properly challenge the purported prosecutorial misconduct of Mr. King. We need not revisit that question.

¶ 27 Appellant next complains that trial counsel was ineffective for failing to move, *in limine*, to preclude presentation of evidence concerning Appellant's alleged involvement with crimes not charged in the instant case. In this context, Appellant also alleges that all prior counsel were ineffective for failing to raise and preserve this claim. Specifically, Appellant cites to several references during his trial that implicated his alleged involvement with drug dealing. According to Appellant's theory, these references were introduced solely to convince the jury he was a bad person.

¶ 28 The general rule in Pennsylvania is that evidence of crimes other than those charged in the case before the jury may not be presented at trial to prove the defendant's "criminal character" or his tendency toward committing criminal acts. *Commonwealth v. Baez*, 554 Pa. 66, 87–88, 720 A.2d 711, 721 (1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999). Nevertheless,

[e]vidence implying other crimes may be introduced when the evidence has a proper evidentiary purpose and is not used merely to demonstrate that the defendant is a person of bad character with a propensity to commit crime.

*Commonwealth v. Gwynn*, 555 Pa. 86, 105, 723 A.2d 143, 152 (1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 410, 145 L.Ed.2d 320 (1999). "Evidence of a distinct crime is admissible if offered to prove, *inter alia*, motive, intent, or the identity of the person charged with the commission of the crime being tried." *Baez, supra.*

¶ 29 The record shows that before Appellant's trial commenced, counsel did in fact make an oral motion to preclude references to Appellant's involvement with

drugs and drug dealing and to his prior arrests on drug related charges. Judge Sabo determined that the Commonwealth would be permitted to introduce evidence concerning drug deals in which failure to pay became a motive for the specific killing that underlies this appeal. N.T. Trial, 12/9/85, at 19. However, Judge Sabo also stated that he would not permit any mention of Appellant's arrest on charges unrelated to the matters before the jury. *Id.* We cannot find counsel ineffective for "failing" to raise a motion which was actually presented to the Trial Court.

¶ 30 Appellant objects to a reference allegedly made to both his drug dealing and his association with drug dealers. This evidence purportedly came in on December 13, 1985, through the testimony of Sonia Mackie, the common law wife of the victim. However, our perusal of the record indicates that Ms. Mackie never referred to Appellant in any way during this segment of her testimony. She stated that Craig Murphy was a cocaine dealer. She averred that the victim was a "good friend" of Appellant's co-defendant, Morris Willis. And she stated that Mr. Willis owed money to the victim from a previous cocaine transaction. N.T. Trial, 12/13/85, at 83–84. Ms. Mackie also testified that the victim both sold and used cocaine, and that Mr. Willis sold cocaine for Craig Murphy. *Id.* at 84–85. When the prosecutor asked Ms. Mackie whether she ever heard a discussion about a drug raid at Mr. Willis' house, counsel for Mr. Willis objected. *Id.* at 85. The Trial Court then called for a sidebar with all counsel. *Id.* We see nothing in this testimony to which Appellant's trial counsel should have objected on behalf of his client, and nothing that indicates that Appellant was ever arrested for crimes not charged in the present case.

¶ 31 Appellant also objects to statements made by the prosecutor which are recorded on pages 88–90 of the transcript from December 13th. However, the transcript is quite clear that these remarks were made "beyond the hearing of the jury" during a sidebar conducted to settle whether Ms. Mackie would be permitted to testify concerning a conversation between Mr. Willis and the victim. *Id.* at 85–90. Judge Sabo decided that she would not be permitted to so testify. *Id.* at 90. Because none of the prosecutor's statements in this context were heard by the jury, there is no possibility that they could have contributed in any way to the verdict in this case. Consequently, we find no merit to this claim.

¶ 32 In the context of this argument, Appellant also objects to evidence introduced on December 17, 1985, as recorded on pages 195–206 of the transcript from that date. The certified record shows that trial counsel, as well as counsel for Appellant's co-defendants, moved for a mistrial predicated on Mr. Harris' testimony concerning the use of his car by Craig Murphy on the night of the victim's killing. N.T. Trial, 12/17/85, at 191. The Trial Court denied the requests for mistrial, and the prosecutor continued examining Mr. Harris on whether he knew James "Muscles" Reynolds, when he loaned his car to Mr. Murphy, and when the car was returned. *Id.* at 191–192. All counsel objected to Mr. Harris' testimony about his car. *Id.* at 192. The trial court overruled the objections, but then called for a recess to conduct a sidebar out of the hearing of the jury. *Id.*

¶ 33 During the sidebar, the prosecutor attempted to obtain a ruling from the Trial Court as to the admissibility of certain evidence concerning the sale and distribution of cocaine, and Mr. Harris' role as a "middle man" between co-defendant Murphy and other distributors. A confusing discussion ensued amongst the prosecutor and all counsel as to their desires for the preclusion of testimony relating to the scope and nature of this alleged drug distribution network. At one point, in very evident frustration, Judge Sabo stated, "I'm not going to answer any of your questions until I know what you are talk-

ing about." *Id.* at 196.[5] Eventually, the Trial Court informed counsel and the prosecutor that he would make a ruling when and if an objection was made to evidence actually adduced. *Id.* at 198. The transcript indicates that events then unfolded before the jury as follows:

MR. GREEN [counsel for co-defendant Morris Willis]: Your Honor, before Mr. King resumes his direct examination of Mr. Harris, I would like to make a request that if there is in fact —

THE COURT: I don't want to hear any more requests. Let him proceed. If you have an objection, let me hear the objection.

MR. GREEN: It is not an objection. It is a simple request for his criminal record.

THE COURT: If you want to do something, do it later on, will you, please?

BY MR. KING:

Q. Mr. Harris, you indicated that a number of your meetings took place in an office that you had. Where was this office.

A. Broad and Erie.

Q. The meetings that you had in your office, what was the subject matter of these meetings?

A. Normally it was the sale and distribution of cocaine.

Q. Who did you have these conversations with?

MR. FRANZEL [Appellant's counsel]: Objection [to] who did you have these conversations with.

MS. COHEN [Counsel for co-defendant Rodney Wells]: Objection.

MR. HAMILTON [Counsel for co-defendant Esau Burroughs]: Objection. Hearsay.

THE COURT: Tell me over here.

(THE FOLLOWING OCCURRED AT SIDE BAR BETWEEN COUNSEL FOR ALL DEFENDANTS, COUNSEL FOR THE COMMONWEALTH AND THE COURT BEYOND THE HEARING OF THE JURY.)

N.T. Trial, 12/17/85, at 198–199.

¶ 34 At sidebar, the prosecutor indicated that he wished to question Mr. Harris about his drug distribution activities and his relationship with Appellant and his co-defendants. Judge Sabo indicated that the jury had heard enough about drugs, unless there was some specific reason to develop a new point. *Id.* at 200–204. The prosecutor stated that he needed to explore cocaine distribution in North Philadelphia because it impacted on the motive for the victim's killing. *Id.* at 205–206. However, when Judge Sabo asked how the testimony would establish the motive for the killing, the prosecutor said he would "abandon the area." *Id.* at 206. Judge Sabo responded, "Fine. Abandon the area." *Id.* Mr. King resumed questioning Mr. Harris, and did not again raise the question of drug dealing. Rather, he asked the witness about his criminal convictions and pending charges unrelated to drugs, whether he knew Appellant and his co-defendants, and if so, whether he used nicknames for them. *Id.* at 206–208.

¶ 35 The transcript is quite clear that, in this context, nothing occurred within the hearing of the jury which could possibly have prejudiced Appellant to the extent it would have altered the outcome of the trial. We note, moreover, that trial counsel objected repeatedly to Mr. King's examination of the witness. As such, we conclude that no basis exists for finding trial counsel ineffective in this regard. Because there is no merit to the substantive claim, we cannot fault subsequent counsel for failing to raise and preserve the issue on direct appeal.

¶ 36 Appellant's penultimate contention is that trial counsel was ineffective

---

5. As an example of the unusual nature of this sidebar discussion, we note that counsel for one of Appellant's co-defendants informed Judge Sabo he could not take any specific position because he felt "strongly both ways" on the question at issue. *Id.* at 197.

for informing the jury, during opening, that Craig Murphy [6] had already been convicted of first degree murder during a prior proceeding arising out of the same facts that would be proven at Appellant's trial. According to Appellant's theory, no rational basis exists for such a remark during opening argument. Thus, he urges us to conclude that counsel was ineffective.

¶ 37 The purpose of an opening statement is to apprise the jury of the background of the case, how the case will develop and what counsel will attempt to prove. *Commonwealth v. Carson*, 559 Pa. 460, 483–484, 741 A.2d 686, 699 (1999). We have reviewed the evidence in the present case, and are convinced that the Commonwealth's assertion as to trial counsel's strategy is correct: trial counsel attempted to convince the jury that James Reynolds' death was planned and committed by Craig Murphy with the assistance of Commonwealth witnesses Keith Johnson and Bernard Williams. *See* Appellee's Brief at 18–19. Because trial counsel intended to prove that Mr. Murphy killed the victim without Appellant's assistance, it was a rational move to inform the jury that Mr. Murphy had already been convicted at a different proceeding of perpetrating this killing.

¶ 38 Under the PCRA, when evaluating a claim that trial counsel was ineffective predicated on an allegedly unreasonable tactical choice, Pennsylvania courts must scrupulously follow the presumption that attorneys act in the interests of their clients. *Commonwealth v. Breakiron*, 556 Pa. 519, 544, 729 A.2d 1088, 1101 (Pa.1999). A petitioner must bear the burden of proving that his attorney could not have possessed any reasonable basis for his action. *Id.* Trial counsel cannot be found ineffective unless his course of action was so lacking in reason that, in light of all the alternatives available, no competent attorney would have chosen it. *Commonwealth v. Albrecht*, 510 Pa. 603, 626, 511 A.2d 764, 776 (1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). Counsel cannot be held ineffective for selecting a particular reasonable course, even if other reasonable choices were available. *Commonwealth v. O'Donnell*, 559 Pa. 320, 333–335, 740 A.2d 198, 206 (1999).

¶ 39 We cannot conclude that it was unreasonable for trial counsel to try to shift all of the blame for the murder onto Messrs. Murphy, Johnson and Williams for the purpose of exonerating Appellant. The fact that this strategy did not result in an acquittal for Appellant does not mean that it was an ineffective choice at the time of trial.

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Commonwealth v. Wells*, 513 Pa. 463, 470, 521 A.2d 1388, 1391 (1987), *quoting Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967) (emphasis in the original). Because trial counsel had a reasonable basis for his opening statement, we cannot find him ineffective on these grounds.

¶ 40 Appellant's final allegation of ineffectiveness concerns trial counsel's failure to object to the Trial Court's jury instruction on accomplice liability and specific intent. Specifically, Appellant complains that Judge Sabo did not inform the jury properly that an accomplice to first degree murder must have the specific intent to kill.

When evaluating jury instructions the charge must be read as a whole to deter-

---

**6.** Mr. Murphy was not a co-defendant at Appellant's trial.

mine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.

*Commonwealth v. Thompson*, 543 Pa. 634, 638–639, 674 A.2d 217, 219 (1996). An appellate court may not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy. *Id.* at 639, 674 A.2d at 219. Rather, we must evaluate whether the charge sufficiently and accurately apprised the lay jury of the law necessary to render a proper decision. *Id.*

¶ 41 In the present case, Judge Sabo instructed the jury concerning the definition of "accomplice" and "accomplice liability" as follows:

Under the law of Pennsylvania, you may find the defendant guilty of a crime without finding that he personally engaged in the conduct required for the commission of that crime or even that he was personally present when the crime was committed.

A defendant is guilty of a crime if he is an accomplice of another person who commits that crime. A defendant does not become an accomplice merely by being present at the scene or knowing about a crime. He is an accomplice if, with the intent of promoting or facilitating the commission of a crime, he solicits, commands, encourages, requests the other person to commit it or aids, agrees to aid or attempts to aid the other person in planning or committing [a crime].

You may find the defendant guilty of a crime on the theory that he was an accomplice as long as you are satisfied beyond a reasonable doubt that the crime was committed and that the defendant was an accomplice of the person who committed it.

N.T. Trial, 12/27/85, at 100–101.

¶ 42 The Trial Court subsequently charged the jury with regard to the elements of first degree murder:

A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing. Thus, in order to find the defendant guilty of murder in the first degree, you must first find that the defendant caused the death of another person or that an accomplice caused the death of another person. That is, you must find that the defendant's acts or an accomplice's acts [are] the legal cause of [the] death of James Reynolds and thereafter you must determine if the killing was intentional.

*Id.* at 110–111. After defining "intentional killing," Judge Sabo stated:

You must ask yourselves the question, did or was the killing a willful, deliberate and premeditated act?

Now, what is meant by these words willful, deliberate and premeditated?

If an intention to kill exists or if a killing was consciously done with knowledge of such consequences or if the killer consciously decided to kill the victim, the killing is willful.... Our cases have consistently held that the requirement of premeditation and deliberation is met whenever there is a conscious purpose to bring about death.

Note well that the law fixes no length of time or no appreciable length of time as necessary to form or frame the intent to kill, which design to kill can be formulated in a fraction of a second. But, it leaves the existence or nonexistence of a fully framed intent to kill as a fact to be determined by the Jury from all the facts and circumstances in the evidence.

Accordingly, no appreciable amount of time is needed between formation of intent and the killing if you, as finders of fact, determine that the killing was done with the required intent to kill.

Further, the required intention to kill may be found in the defendant's acts, declarations, words or conduct or by the circumstances under which the killing was accomplished.

*Id.* at 112–114.

¶ 43 We find that these instructions by Judge Sabo substantially re-

produce those which the Pennsylvania Supreme Court held to be a proper explanation of accomplice liability for first degree murder in *Commonwealth v. Chester*, 526 Pa. 578, 613, 587 A.2d 1367, 1384 (1991), *cert. denied,* 502 U.S. 849 & 959, 112 S.Ct. 152 & 422, 116 L.Ed.2d 117 & 442 (1991). Our Supreme Court ratified its holding from *Chester* in *Thompson, supra,* 543 Pa. at 644–646, 674 A.2d at 222–223. In *Commonwealth v. Gibson*, 547 Pa. 71, 688 A.2d 1152 (1997), *cert. denied,* 522 U.S. 948, 118 S.Ct. 364, 139 L.Ed.2d 284 (1997), our Supreme Court once again relied on *Chester* for the proposition that a jury instruction concerning accomplice liability for first degree murder is sufficient if it adequately defines the role of the accomplice and makes it clear that the accused must have the specific intent to facilitate the crime contemplated and committed by the principal, *i.e.,* first degree murder. *Id.* at 102, 688 A.2d at 1167–1168. We conclude that Judge Sabo's jury instruction satisfied the requirements of *Chester* and its progeny. Counsel will not be deemed ineffective for failing to raise a meritless objection to proper jury instructions. *Id.*

¶ 44 We have carefully scrutinized the certified record in this case in light of the arguments presented by Appellant and the Commonwealth's response. We find no claim that warrants the requested relief, and no basis upon which we could overturn Judge Sabo's ruling in this matter. We therefore affirm the decision of the PCRA Court.

¶ 45 Order affirmed.

¶ 46 Judge FORD ELLIOTT concurs in the result.