J. S27043/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
SEAN SKIBBER, :
:
Appellant : No. 2666 EDA 2014

Appeal from the Judgment of Sentence March 18, 2014
In the Court of Common Pleas of Monroe County
Criminal Division No(s).: CP-45-CR-0000585-2013
CP-45-CR-0000818-2013

BEFORE: FORD ELLIOTT, P.J.E., STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED AUGUST 31, 2015**

Appellant, Sean Skibber, appeals from the judgment of sentence[1]

entered in the Monroe County Court of Common Pleas following a jury trial

on November 13, 2013, on both of the above docketed cases. In docket

number 585, Appellant was convicted of burglary,[2] conspiracy,[3] criminal

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant purported to appeal from the September 8, 2014 order denying his post-sentence motion. "However, when timely post-sentence motions are filed, an appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." ***Commonwealth v. Kuykendall***, 2 A.3d 559, 560 n.1 (Pa. Super. 2010). Accordingly, we have amended the caption.

[2] 18 Pa.C.S. § 3502(a).

[3] 18 Pa.C.S. § 903(c).

trespass,[4] theft by unlawful taking,[5] and receiving stolen property.[6] In docket number 818, Appellant was convicted of burglary, conspiracy—burglary, criminal trespass, theft by unlawful taking, conspiracy—theft by unlawful taking, receiving stolen property, and criminal mischief.[7] Appellant avers the trial court erred in (1) denying relief based upon ineffective assistance of counsel, (2) denying his motion for a mistrial based upon a comment by the Commonwealth during closing argument; and (3) finding that the verdicts were not against the weight of the evidence. We affirm.

We glean the facts from the notes of testimony. Pennsylvania State Trooper Francis McDonough testified as an initial responder to the incidents in this case. N.T., 11/12/13, at 40. He was on duty on July 18, 2012, and responded to a report of a burglary on Barren Road in Middle Smithfield Township. *Id.* at 41. When he approached the house, he could see that the front door was "smashed and, obviously, there was some sort of forced entry into the house." *Id.* The house was in disarray. *Id.* at 45-46. The victim related that the home was neat when she left the house. *Id.* at 46.

---

[4] 18 Pa.C.S. § 3503(a)(1)(ii).

[5] 18 Pa.C.S. § 3921(a).

[6] 18 Pa.C.S. § 3925(a).

[7] 18 Pa.C.S. § 3304(a)(5).

After processing the scene, he went to a local pawn shop. *Id.* He was looking for a portable Sony DVD player. *Id.* at 48. The receipt from the pawn shop indicated the items' descriptions, viz., a Stihl 14-inch bar chainsaw, 18-inch bar chainsaw, a leaf blower, the Sony portable DVD player, and the signature of Sean Egley. *Id.* at 49, 58.

Trooper Nicholas Bressler testified he responded to a report of a burglary on Manzanedo Road in East Stroudsburg on July 22, 2012. *Id.* at 62. The cabin "was completely rummaged through, stuff scattered everywhere." *Id.* at 63. The owner indicated what was missing from the cabin. *Id.* The following items were reported stolen:

> A Sharp, 1.5 cubic foot, 900 watt, microwave; Model No. R930AK; a Visio, 36-inch LCD TV; Stihl chainsaw MDL MS250, Serial No. 287743106; a Stihl Woodman, a carrying case for the chainsaw; a Stihl leaf blower; a Marlin 77 .22 caliber Bolt with Weaver 4X Scope; a Stevens Model 77 .20 caliber pump; Rossi 223 caliber single shot-break action; a US Krag 30-40 caliber carbine with saddle ring; RCBS powder balance beam scale; IMP 4064 gun powder, one pound; Remington large rifle primers; American flag, 3x5 feet with brass pole.

*Id.* at 65.

Sean Michael Egley testified at trial. *Id.* at 90. He was at the Paramount hotel with Appellant in July of 2012. *Id.* at 91. He "was high on dope so you are not up to par with what's going on." *Id.* at 92. He had keys for the car. *Id.* at 92. He was with Appellant and Marion Hodges. *Id.* at 91, 93, 98. He was having problems driving. *Id.* at 93. They asked him to stop by Wooddale and Barren Road. *Id.* The trunk to the car was open.

*Id.* He was "nodding off, kept driving off the road." *Id.* Marion had a pillowcase and he put it in the trunk. *Id.* at 94-95. They drove two to three miles to Manzanedo Road. *Id.* at 95-96. Appellant and Marion both got out of the car. *Id.* at 96. Marion and Appellant were in the car with him when he left and went to the pawn shop. *Id.* at 96-97. He did not remember how they got to the pawn shop. *Id.* at 97. He had a chainsaw he wanted to sell. *Id.* Days later Egley "found out that they got [him] for receiving stolen property; that it was stolen, some of it was stolen, supposedly." *Id.* Egley and Marion went into the pawn shop. *Id*. at 98. He did not remember if Appellant went into the pawn shop. *Id.* "A lot of it was a drug-induced haze. You have to look at the pictures. I know they got pictures of it. I'm not really sure." *Id.* He identified his signature on a document from the Fast Cash Check Cashing and Trading Post. *Id.* at 99. He remembered giving his identification to whoever was working behind the counter at the pawn shop. *Id.* He gave his identification to sell his "chainsaw and the other stuff that was in the car." *Id.* He remembered receiving money and buying drugs. *Id.* at 101. He could not remember if Appellant went with them to buy drugs. *Id.* He knew "we all ended up back at that hotel . . . ." *Id.* He was testifying because he "had received consideration when [he] entered [his] own guilty plea . . . ." *Id.* He was charged with the same charges as Appellant. *Id.* at 111. However, with the exception of one charge, the charges were dismissed. *Id.* He received probation. *Id.*

Ryan Potts testified that he was employed at Fast Cash Check Cashing and Trading Post, a licensed pawn shop. *Id.* at 134. He recalled three men coming in to sell electronics and lawn equipment in July of 2012. *Id.* They also brought in a portable DVD player. *Id.* at 135. The pawn shop "take[s] state issued state identification from anyone who sells us anything" and we record the make, model and serial number on the bill of sale. *Id.* The state police came in to investigate. *Id.* "Trooper McDonough had come in and noticed the portable DVD player. And we then showed them that they had brought in other stuff as well . . . ." *Id.* Potts identified Appellant in the courtroom. *Id.* at 136. The pawn shop uses video surveillance and it was in operation on the date in question. *Id.* The video surveillance[8] was provided to the state police. *Id.* Potts identified a photograph as showing Sean Egley, Appellant, and a third male as having been in the pawn shop. *Id.* at 138. Potts again identified Appellant in the courtroom. *Id.* On cross-examination by defense counsel, Potts identified Mr. Egley. *Id.* Potts stated Egley signed the receipt for the items and received the money. *Id.* at 139. The video was "an accurate depiction of what went on in [the] store that day[.]" *Id.* at 146.

---

[8] Defense counsel requested the entire video be played, explaining to the court at side-bar that Appellant was in the video "in the last maybe four minutes of the 20-minute video. Most of the video shows Mr. Hodges and Mr. Egley in that video." *Id.* at 140-41. The entire video was shown to the jury. *Id.* at 173.

Robert Lombardo, a Trooper with the Pennsylvania State Police testified. *Id.* at 146. Items from both burglaries appeared at the pawn shop. *Id.* at 150. The items reported stolen from the Manzanedo Road cabin were a microwave, a TV, the lawn equipment, maybe two chainsaws, and a leaf blower.[9] *Id.* at 152. The video showed Mr. Egley carrying one of the chainsaws and Appellant carrying another chainsaw. *Id.* at 154. According to the video, Mr. Hodges and Mr. Egley initially brought the products into the Fast Cash Store. *Id.* at 163. He filed the criminal complaint against the three men. *Id.* at 164.

Appellant filed a post sentence motion. A hearing was held on July 22, 2014. Appellant's post-sentence motion was denied.[10] Appellant received

---

[9] He also testified that there were several guns reported stolen which were never recovered. *Id.* at 152.

[10] Appellant's post-sentence motion was filed on March 26, 2014. The trial court entered an order denying the post-sentence motion on September 8, 2014. Generally, a notice of appeal must be filed within thirty days of the imposition of sentence. Pa.R.Crim.P. 720(A)(3). When a defendant files a timely post-sentence motion as here, the notice of appeal must be filed either within thirty days of the entry of the order deciding the motion or within thirty days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion. Pa.R.Crim.P. 720(A)(2)(a), (b). The trial court indicates "action was due on [Appellant's] [p]ost-[s]entence [m]otion by July 24, 2014, but extended for thirty (30) days to August 23, 2014 at the request of [Appellant]. A hearing was held July 22, 2014, and the time to render a decision due August 23, 2014 has technically expired, making the [p]ost-[s]entence [m]otion deemed denied by this [c]ourt." Trial Ct. Op., 9/8/14, at 2. Thus, although the trial court indicates that Appellant's post-sentence motion was denied by operation of law effective August 23, 2014, since the order so indicating was not filed

an aggregate sentence of seven to fourteen years' imprisonment. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[11] The trial court filed a statement pursuant to Pa.R.A.P. 1925(a) based upon its Opinion dated September 8, 2014.

Appellant raises the following issues for our review:

> 1.) Did the lower court err in denying Appellant relief based on ineffective assistance of trial counsel?
>
> 2.) Did the lower court abuse its discretion in denying Appellant's motion for a mistrial based on a reference made by the Commonwealth during closing argument that Egley was threatened and/or intimidated by Appellant's acquaintances at the direction of Appellant while Egley was in prison?
>
> 3) Did the lower court abuse its discretion in finding that the verdicts were not against the weight of the evidence where the lower court summarily dismissed Appellant's weight claim without citing any rule or legal standard or conducting any legal analysis?

Appellant's Brief at 4.

_____

until September 8, 2014, Appellant's notice of appeal will be deemed timely filed within thirty days of that order.

[11] We note Appellant raised twenty-two errors in his Rule 1925(b) statement. Rule 1925(b)(4)(iv)provides that "the number of errors raised will not alone be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(iv). Moreover, our Supreme Court instructed that with respect to lengthy Rule 1925(b) statements, no violation is sufficient to find waiver of issues unless the trial court finds that the appellant acted in bad faith. ***PHH Mortg. Corp. v. Powell***, 100 A.3d 611, 614 (Pa. Super. 2014), (citing ***Eiser v. Brown & Williamson Tobacco Corp.***, 938 A.2d 417 (Pa. 2007)). Although his Rule 1925(b) statement was not concise, we decline to find waiver because the trial court did not find that he acted in bad faith. ***See id.***

First, Appellant contends trial counsel was ineffective.[12]  As a prefatory matter, we consider whether the trial court properly considered the ineffective assistance of counsel claims in Appellant's post-sentence motion. In **Commonwealth v. Harris**, 114 A.3d 1 (Pa. Super. 2015), this Court explained:

> Our Supreme Court determined that, absent certain circumstances, "claims of ineffective assistance of counsel are to be deferred to [Post-Conviction Relief Act[13] ("PCRA")] review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." [**Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013)[14] (footnote omitted).]
>
> The **Holmes** Court noted two exceptions to the general rule of deferring ineffective assistance of counsel claims until PCRA review.  First, "there may be an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both meritorious and **apparent from the record** so that immediate consideration or relief is warranted." **Id.** at 577 (emphasis added).  Second, our Supreme Court determined that in cases where "prolix" claims of ineffectiveness are raised, "unitary review, if permitted at all, **should only proceed where accompanied by a**

---

[12] We note that in Appellant's Rule 1925(b) statement, he raised ten claims of ineffective assistance of counsel.  In his brief, he raised five issues, thus abandoning several issues on appeal.  **See Commonwealth v. Dunphy**, 20 A.3d 1215, 1218 (Pa. Super. 2011).

[13] 42 Pa.C.S. §§ 9541-9546.

[14] This Court in **Holmes** stated **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002) remains pertinent law for timing of review for claims of ineffective assistance of counsel.  **Holmes**, 79 A.3d at 563.  **Grant** held generally that a claim of ineffective assistance of counsel should be deferred to PCRA review.  **Grant**, 813 A.2d at 738.

> **knowing, voluntary, and express waiver of PCRA
> review**.” ***Id.*** at 578.

*Id.* at 5-6 (some emphasis added).

In the case *sub judice*, following a hearing on July 22, 2014, where Appellant was represented by new counsel, the trial court found that Appellant “sufficiently understood his waiver of rights to a future PCRA hearing after the merits of his direct appeal are determined, and that he made a knowing and intelligent waiver.”  Trial Ct. Op., 9/8/14, at 1.  At the hearing, the following exchange took place between counsel and Appellant:

> [Counsel]: Have you and I spoken at great length about the [PCRA]?
>
> A: Yes, we have.
>
>      *     *     *
>
> Q: Are you aware that by filing, within the post-sentence motion, claims of ineffective assistance of counsel, you are waiving your opportunity to file a first PCRA in the future?
>
> A: Absolutely I do.
>
> Q: Is that what you want to do?
>
> A: Yes, absolutely.
>
> Q: So you understand that any PCRA that you would wish to file would be subject to the rules of serial filing of PCRA; meaning that there would be special rules that govern whether or not you could even have a hearing, or whether the [c]ourt would appoint counsel, or things of that nature?
>
> A: Yes, I do.
>
> Q: Do you wish to waive those rights?

A: Yes, I do.

Q: Do you want the [c]ourt to hear the ineffective assistance of counsel claims at this time?

A: Yes, I do.

Q: You understand you are also waiving the opportunity to conduct any further investigation into any ineffective assistance of counsel claims?

A: Yes, I do.

Q: Is that a knowing and intelligent waiver? In other words, have you had the opportunity to ask me any questions you wanted to ask about it, and are you comfortable telling the [c]ourt that's what you want to do?

A: Fully comfortable.

Q: And you understand that you can't come back and change that decision ever again in the future?

A: I do.

Q: You are stuck with it?

A: Absolutely.

N.T., 7/22/14, at 16-17.[15]

We agree with the trial court that Appellant expressly, knowingly and voluntarily waived PCRA review and proceed to address Appellant's claims of ineffective assistance of counsel in seriatum. **See Harris**, 114 A.3d at 5-6.

_____

[15] We note Appellant also waived the attorney-client privilege so that questions could be asked about discussions he had with trial counsel. **See id.** at 18.

Appellant contends trial counsel was ineffective for failing to have the court colloquy him regarding his desire to testify and for failing to advise him of his absolute right to testify.[16]   Appellant's Brief at 13.   He argues that counsel's failure to have the court colloquy him vitiated his knowing and voluntary decision not to testify.  *Id.* at 15.

This Court has stated:

> Our standard and scope of review for the denial of a PCRA petition is well-settled.
>
> > [A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error.  The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.
>
> *     *     *
>
> > . . . Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him.   In Pennsylvania, we have refined the [***Strickland v. Washington***, 466 U.S. 668 (1984),] performance and prejudice test into a three-part inquiry.   Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result.   If a petitioner fails to prove any of these prongs,

---

[16] Appellant claims counsel did not inform him that his prior felonies were *crimen falsi* that could be used to attack his credibility.  *Id.* at 14.  This issue was not raised in Appellant's post-sentence motion or in his Rule 1925(b) statement.  "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."  Pa.R.A.P. 302(a).

his claim fails. . . . To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

\* \* \*

[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it "could have reasonably had an adverse effect on the outcome of the proceedings."

***Commonwealth v. Charleston***, 94 A.3d 1012, 1018-19 (Pa. Super.)

(citations omitted and alterations in original), *appeal denied*, 104 A.3d 523

(Pa. 2014).

In reviewing the propriety of an order denying PCRA relief, this Court is limited to examining whether the evidence of record supports the determination of the PCRA court, and whether the ruling is free of legal error. Great deference is given to the findings of the PCRA court, which may be disturbed only when they have no support in the certified record.

***Commonwealth v. Perry***, 959 A.2d 932, 934-35 (Pa. Super. 2008)

(citations omitted). "[W]e must defer to the credibility determinations made

by the trial court that observed a witness's demeanor first hand."

***Commonwealth v. Todd***, 820 A.2d 707, 712 (Pa. Super. 2003). This Court

has held "there is no express requirement that a trial court conduct [ ] a

colloquy with regard to a defendant's right to testify." ***Id***.

The trial court found

> trial counsel testified credibly that he believed [Appellant] understood his right to testify or not. Trial counsel stated he would have informed [Appellant] of his right and would have informed the [c]ourt if [Appellant] did not understand that right. Trial counsel recalled [Appellant] did not want to testify because he had a significant felony record.

Trial Ct. Op., 9/8/14, at 5; *see* N.T., 7/22/14, at 78. We agree no relief is due.

> At the hearing, Appellant testified, *inter alia*, as follows:

> [Counsel]: Now, also talking about trial preparation, did [trial counsel] discuss with you the possibility of you testifying?

> A: Yes.

> Q: And what was [counsel's] advice regarding that?

> A: He strongly suggested that I do not testify. I am a convicted felon, and he doesn't agree with putting convicted felons on the stand.

> Q: Did [counsel] advise you that you have an absolute right to testify.

> A: Yes, he told me I could testify.

> Q: Did you understand that?

> A: Yes.

> Q: Did you want to testify?

> A: At the second day of trial, I did.

N.T., 7/22/14, at 32. Counsel testified he discussed with Appellant his right to testify the night before trial when he visited him in jail. *Id.* at 78.

The trial court found counsel to be the more credible witness. Appellant is asking this Court to find him to be the more credible witness. We defer to the credibility determinations of the trial court. **See Todd**, 820 A.2d at 712. Appellant testified he was aware of his right to testify. Therefore, there was no requirement that the court conduct a colloquy. **See id.** We discern no abuse of discretion. **See Perry**, 959 A.2d at 934-35.

Next, Appellant contends counsel was ineffective for failing to have the court colloquy him on whether or not he desired to have the jury receive a "no adverse inference" instruction relative to his failure to testify. Appellant's Brief at 15. He argues "where there **is** a reasonable basis alerting counsel that the charge **would** be relevant, failure to colloquy the defendant **is** ineffective assistance of counsel." **Id.** at 16 (emphases supplied). Appellant asserts he "was prejudiced by the lack of a colloquy because there is a reasonable probability that, had trial counsel requested a colloquy to waive the instruction, the outcome would have been different as the jurors would not have been alerted to the fact that Appellant failed to testify when it is plausible to conclude, as many jurors would, that his testimony could have supported his defense." **Id.** at 17.

In **Commonwealth v. Perez**, 103 A.3d 344 (Pa. Super. 2014), *appeal denied*, 116 A.3d 604 (Pa. 2015), this Court held that pursuant to **Commonwealth v. Stanley**, 830 A.2d 1021 (Pa. Super. 2003), "a failure to request a colloquy with respect to waiver of the instruction . . . cannot

constitute prejudice *per se* . . . ." ***Perez***, 103 A.3d at 349. Therefore, the "standard three-part ineffectiveness test should govern the analysis . . . ." ***Id.*** Our Supreme Court holds "the no adverse inference instruction shall be given absent an **express** on the record colloquy by the defendant waiving the charge." ***Commonwealth v. Thompson***, 674 A.2d 217, 222 (Pa. 1996). Furthermore, "[a]s this claim is premised upon trial counsel's inaction, appellant must establish that he **suffered prejudice as a result of counsel's failure to act to such a degree that absent counsel's error the outcome of the verdict would have been different**." ***Id.*** at 221 (emphasis added).

The trial court found "[t]here does not appear to be any support in the record that trial counsel lacked a reasonable basis not to request such a colloquy or that [Appellant] suffered prejudice." Trial Ct. Op. at 6. We agree no relief is due.

At the hearing on his post-sentence motions, Counsel asked Appellant if trial counsel spoke with him "about the jury instruction that relates to your decision to testify or not[.]" N.T., 7/22/14, at 36. The Commonwealth objected and the court overruled the objection. ***Id.*** at 36-37. Appellant testified as follows regarding the no adverse inference jury instruction:

> Q: Mr. Skibber, let me rephrase the question. Did [trial counsel] discuss with you a jury instruction regarding your decision to testify or not testify?
>
> A: No.

- 15 -

Q: So did you have any idea that you had a choice in whether the jury hears an instruction about not holding against you that you did not testify?

A: No, I didn't know.

Q: Or having the decision to have the jury not receive that instruction?

A: No.

Q: So you didn't know that you had that option?

A: No.

*Id.* at 37.

Appellant baldly asserts that he was prejudiced by the lack of a colloquy because waiver of the instruction would not have alerted the jury to the fact that he failed to testify. Appellant's Brief at 17. This bald assertion, coupled with his testimony regarding the charge, does not establish prejudice. **See Thompson**, 674 A.2d at 221; **Perez**, 103 A.3d at 349; **Charleston**, 94 A.3d at 1018-19.

Next, Appellant claims counsel was ineffective for failing to request a "corrupt and polluted source" instruction where "the only meaningful evidentiary link between the crimes charged and Appellant" was the testimony of Egely. Appellant's Brief at 17. He argues "[t]rial counsel was unable to put forth any reasonable basis for failing to request the charge." *Id.* at 18.

A corrupt and polluted source "instruction informs the jury that if it finds that a certain witness who testified against the defendant was an

accomplice of the defendant in a crime for which he is being tried, then the jury should deem that witness a corrupt and polluted source whose testimony should be considered with caution." ***Commonwealth v. Briggs***, 12 A.3d 291, 340 n.45 (Pa. 2011) (quotation marks and citation omitted).

In the case *sub judice*, the trial court opined "such an instruction would be inconsistent and contrary to the defense that [Appellant] did not commit the crimes. Trial counsel stated the defense was to separate [Appellant] from Egley and Hodges due to lack of forensic evidence that [Appellant] was at the scene of the crimes. It was reasonable for trial counsel to not request the instruction under those circumstances." Trial Ct. Op. at 4. We agree no relief is due.

At the post sentence motion hearing, trial counsel testified, *inter alia*, as follows:

> [Present Counsel]: . . . Do you agree with me that you did not request a corrupt and polluted source charge to the jury?
>
> A: Yes.
>
> Q: Do you agree with me that, in this case, Mr. Egley was a co-defendant?
>
> A: Yes.
>
> * * *
>
> Q: Did the Commonwealth have any forensic evidence that placed [Appellant] at the scene?
>
> A: Not that I know of.

Q: Was any presented at the time of trial?

A: Not that I saw.

Q: Did [Appellant] confess to being at the scene?

A: Not that I know of.

\* \* \*

Q: The location of either burglary, did [Appellant] confess to being at the location of either burglary as part of the burglary?

A: No.

Q: Did Mr. Egley place [Appellant] at the scene of the burglaries?

A: I believe he did, yes, several times.

\* \* \*

Q: . . . Other than Mr. Egley's testimony, were you aware of any other testimony, were you aware of any other testimony at the time of trial that placed [Appellant] at the scene of either burglary?

A: Not that I know of.

\* \* \*

Q: . . . You have suggested here today that your theory of the case was essentially to separate [Appellant] from Mr. Egley or Mr. Hodges, correct?

A: From all of the co-defendants because of the lack of forensic evidence.

\* \* \*

[The Commonwealth]: Concerning [the] failure to request a corrupt and polluted source instruction, is it fair to say

that part of your strategy was to attack the credibility of Mr. Egley?

A: Yes, it was.

Q: And did you attack his credibility by eliciting that he was an extensive drug user?

A: Yes, I did.

Q: And did you attack his credibility by eliciting that he entered into a favorable agreement and sentence with the Commonwealth?

A: I thought I did.

N.T., 7/22/14, at 67, 68, 69, 72, 74-75.[17]

At trial, Appellant's defense was that he was not guilty because he did not commit the crimes charged. In closing argument, trial counsel stated the jury was asked to convict Appellant "based on the testimony of Captain Speedball.[18] That's not evidence." N.T., 11/13/13, at 25. Counsel argued:

---

[17] We note at trial, the Commonwealth proposed a jury instruction on liability for the conduct of another. N.T., 11/13/13, at 6. Trial counsel objected to that instruction. *Id.* The court agreed to give the standard conspiracy instruction. *Id.* at 11.

[18] At the post sentence hearing, the Commonwealth questioned trial counsel regarding this reference to Mr. Egley as follows:

> Q: . . . And did you often refer to Mr. Egley as Captain speedball throughout your closing argument?
>
> A: I did. He had actually told the court at trial about the drugs that he was on that day, and he described them as a speedball. He actually laid it out for the entire jury. . . . He laid out to the jury, quite animated, what a speedball was and that he was—I think he testified he was under the

Appellant "is here because he said three words at an arraignment, two words: Not guilty. That's what he said. That's why he's here. Not guilty. I didn't do this." *Id.* Appellant has not proven that the outcome of the trial would have been different had the court given a corrupt and polluted source instruction. *See Charleston*, 94 A.3d at 1018-19. We find the evidence supports the determination of the PCRA court. *See Perry*, 959 A.2d at 934-35.

Appellant contends counsel was ineffective for failing to provide a timely notice of an alibi defense, viz*.*, his niece, Danielle Skibber. Appellant's Brief at 19, 20. Appellant avers that "Ms. Skibber's testimony **may not have been able to account for all of Appellant's whereabouts on the morning of the burglaries** . . . ." *Id.* at 21 (emphasis added). He concedes "[e]ven if **not enough to meet Appellant's burden of proof with respect to the alibi defense**, it most certainly would have created a reasonable doubt in the minds of the jurors . . . ." *Id.* (emphasis added).

The Pennsylvania Supreme Court has explained:

> An alibi is a defense that places the defendant at the relevant time at a different place than the scene involved and **so removed therefrom as to render it impossible for him to be the guilty party**. Where such evidence

---

influence of that, so I thought that his credibility was pretty bad.

N.T., 7/22/14, at 76.

> has been introduced, a defendant is entitled to an alibi instruction to alleviate the danger that the jurors might impermissibly view a failure to prove the defense as a sign of the defendant's guilt.

*Commonwealth v. Bryant*, 855 A.2d 726, 741 (Pa. 2004) (emphasis supplied and citations omitted).

Instantly, the trial court opined, based upon Ms. Skibber's testimony at the post-sentence hearing, that she "could not positively account for [Appellant's] whereabouts at the time of the burglaries and her time frame that she saw Appellant with Egley and Hodges was contradicted by the time they were in the pawn shop selling some of the stolen items." Trial Ct. Op. at 3. Appellant acknowledges she could not place Appellant at the relevant time at a different place than the scene of the crime. Appellant concedes Ms. Skibber's testimony would not satisfy his burden of proof with respect to the alibi defense. *See Bryant*, 855 A.2d at 741. Counsel cannot be deemed ineffective for failing to raise a meritless claim. *See Charleston*, 94 A.3d at 1019-19.

Finally, Appellant claims trial counsel was ineffective in failing to adequately cross-examine Egley regarding the benefits of his plea, his relationship with the Monroe County District Attorney's Office, and his prior *crimen falsi*. Appellant's Brief at 22. Appellant asserts "the outcome of the trial would have been different had [trial counsel] more thoroughly cross-examined Egley." *Id.* at 23.

Appellant does not cite any legal authority in support of this argument. *See* Pa.R.A.P. 2119(b). However, we decline to find waiver as this defect does not impede our ability to conduct meaningful appellate review. *See Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010).

The trial court opined: "The record indicates trial counsel cross-examined Egley on many relevant issues that undermined his credibility. (N.T.[,] 11/12/13[, at] 105-115)." Trial Ct. Op. at 6. In *Commonwealth v. Sneed*, 45 A.3d 1096 (Pa. 2012), the Supreme Court found the appellant's claims of ineffective assistance of counsel based upon the cross-examination of a witness to be meritless.

> Also baseless are [the a]ppellant's allegations of ineffectiveness founded upon the cross-examination of Robert Henderson ("Henderson"). [The a]ppellant does not explicate the precise grounds for his claim of ineffectiveness other than to state that counsel failed to "adequately" impeach Henderson regarding his criminal background. [The a]ppellant intimates that this failure was particularly egregious since Henderson was the "only" witness who could place [him] near the crime scene. We find these contentions to be completely devoid of merit. Defense counsel's first question to Henderson concerned his arrest record, which elicited testimony that Henderson had been arrested "at least fifteen times" for numerous robberies and burglaries. Counsel's cross-examination also exposed Henderson's drug use, his failure to report the murder, and numerous inconsistencies in his testimony. Consequently, [the a]ppellant has failed to demonstrate that counsel did not "adequately" cross-examine Henderson.

*Id.* at 1108 (citations omitted).

In the case at bar, trial counsel cross-examined Egley about his drug use, specifically, heroin, cocaine and methamphetamine. N.T., 11/12/13, at 109-11. Counsel asked him about the original charges in the instant case and the charges that were dismissed based upon his cooperation. *Id.* at 111. The jury was informed that he received probation. *Id.* Counsel asked Egley if he had a criminal record prior to this incident. *Id.* at 113. Egley testified that he had a record for "[b]urglary to drugs to gun charges to assaults, armed robbery." *Id.* Our review of the record reveals that Appellant failed to establish inadequate cross-examination. *See Sneed*, 45 A.3d at 1108. Therefore, we find no merit to this claim of ineffective assistance of counsel. *See Charleston*, 94 A.3d at 1018-19.

In his second issue, Appellant contends the trial court abused its discretion in denying his motion for a mistrial based upon the statement made by the Commonwealth during closing argument that Egley was intimidated and/or threatened by acquaintances of Appellant at Appellant's direction while Egley was in prison.[19] Appellant's Brief at 23.

---

[19] Appellant objected when the Commonwealth finished its closing argument. Counsel stated:

> Your Honor, at this time I would like to make a motion for a mistrial. I believe that the Commonwealth's comment that my client threatened, okay, Mr. Hodges in jail was—there is no evidence. It was improper. It was incorrect. And it should not have been done. It is highly prejudicial . . . .

Our review is governed by the following principles:

A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

*Comonwealth v. Caldwell*, 117 A.3d 763, 774 (Pa. Super. 2015) (*en banc*)

(citations omitted).

Instantly, the trial court opined the prosecutor's

---

THE COURT: Let's hear it. For the record, I don't think I heard that.

[Counsel]: Well, that's what I heard. He said that my client threatened Mr. Hodges.

N.T., 11/13/13, at 51. Appellant objected after the Commonwealth concluded its closing argument, preserving this issue. *See Commonwealth v. Rose*, 960 A.2d 149, 154 (Pa. Super. 2008).

- 24 -

comment[20] did not cause prejudice to [Appellant] requiring a mistrial. The comment did not reference [Appellant] was in jail. it was consistent with testimony of Attorney Tomas Sundmaker[21] that Egley had advised him that he was being pressured by other inmates.[22] Egley

---

[20] At trial, the prosecutor, in his closing argument stated, *inter alia*, Appellant's "boys shook him down in prison. That's why we're here at trial. [Appellant] bet wrong. [Appellant] bet he had Sean Egley all sewn up, and that Mr. Egley was not going to sing." N.T., 11/13/13, at 45-46.

[21] Attorney Sundmaker represented Egley in his plea to a misdemeanor in this case. N.T., 11/12/13, at 118-19.

[22] Attorney Sundmaker testified as follows regarding the pressure from other inmates:

> [The Commonwealth]: And as a result of your representation of Mr. Egley, did you take any action as a result of that representation?
>
> A: Yes, I did. I interviewed Mr. Egley. . . . I did have one point in time where, . . . I became aware of certain situations that were occurring at the correctional facility, incidences of intimidation.
>
> Q: What do you mean by that?
>
> A: Instances where basically there was pressure being placed on Mr. Egley by other inmates. I cannot specifically get into what Mr. Egley related to me. That's attorney-client privileged information. But what I did do was I undertook to contact law enforcement to basically advise them of the fact that—and I believe I spoke with the trooper—that I was concerned with the fact that Mr. Egley was being put under undue influence or pressures and threats.

N.T., 11/12/13, at 119-20.

denied any threats in his testimony.[23] Neither the testimony of Attorney Sundmaker, nor the closing argument of counsel for the Commonwealth indicated that [Appellant] made threats to Mr. Egley while both were in jail. Therefore, there were no grounds for granting a mistrial due to a remark about [Appellant] threatening Egley in jail.

Trial Ct. Op. at 13. We discern no abuse of discretion. The comment by the Commonwealth, even assuming it was improper, did not deprive Appellant of a fair trial. *See Caldwell*, 117 A.3d at 774.

Lastly, Appellant contends the trial court abused its discretion in finding that the verdicts were not against the weight of the evidence. Appellant's Brief at 25. Appellant's sole argument in support of this claim is that the lower court "abused its discretion in evaluating [his] weight claim" *Id.* at 26. Moreover, "the lower court did not conduct a weight of the evidence analysis and did not even cite or apply the relevant legal standard and rules of law. For this reason, the lower court abused its discretion in failing to adequately and thoroughly address Appellant's weight claim." *Id.*

As a prefatory matter, we consider whether Appellant has waived this claim. On appeal, Appellant fails to cite to the place in the record where this

---

[23] Egley testified at trial that he was not afraid of Appellant nor did Appellant threaten him or try to intimidate him. N.T., 11/12/13, at 116. He did not tell his lawyer that Appellant was intimidating him. *Id.* at 116-17.

claim was preserved before the trial court.[24]  **See** Pa.R.A.P. 2117(c) (requiring statement of case to specify state of proceedings at which issue sought to be reviewed on appeal was raised); 2119(e) (requiring same of argument section of appellate brief); **Commonwealth v. Fransen**, 42 A.3d 1100, 1106 n.11 (Pa. Super. 2012) ("Failing to direct this Court to specific portions of the record in support of an argument violates Pa.R.A.P. 2119(c) [and for] that reason alone, we could conclude this issue is waived."). Even if we decline to find waiver on this basis, Appellant has failed to develop his weight of the evidence claim. Our Pennsylvania Supreme Court opined:

> [W]e are compelled to point out that while a person convicted of a crime is guaranteed the right to direct appeal under Article V, Section 9, of the Pennsylvania Constitution, where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. **See** [ ] Pa.R.A.P. 2119(a) (each point treated in an argument must be "followed by such discussion and citation of authorities as are deemed pertinent"). It is not the obligation of this Court, even in a capital case, to formulate Appellant's arguments for him.

**Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) (some citations omitted).

---

[24] We note in his post-sentence motions, Appellant baldly asserted "[t]he jury's verdict was against the weight of the evidence." Appellant's Post Sentence Motions, 3/26/14, at 4 (unpaginated).

In the case **sub judice**, Appellant has failed to develop the weight of the evidence claim in any meaningful fashion and we will not formulate his argument for him. **See id.** Therefore, we find the issue waived. **Id.**

Judgment of sentence affirmed.

Judge Stabile joins the memorandum.

President Judge Emeritus Ford Elliott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2015