**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEVEN R. MILLER | : | |
| | : | |
| Appellant | : | No. 2173 EDA 2021 |

Appeal from the PCRA Order Entered October 6, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011245-2012

BEFORE: PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.: **FILED MAY 23, 2023**

Steven R. Miller appeals from the order, entered in the Court of Common Pleas of Philadelphia County, denying his petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After review, we affirm.

On June 10, 2013, Miller shot and killed Maurice Kimble following an argument at a restaurant/bar in the Northern Liberties section of Philadelphia. At trial, Miller took the stand and testified that he shot Kimble in self-defense, while Kimble was reaching for a gun concealed under his shirt. Several eyewitnesses, however, testified otherwise. On October 28, 2013, a jury convicted Miller of third-degree murder, possessing an instrument of crime, carrying a firearm without a license, and carrying a firearm on the public streets of Philadelphia. The trial court sentenced Miller to 23½ to 47 years' imprisonment. Following sentencing, Miller filed a post-sentence motion,

which was denied by operation of law. This Court affirmed on direct appeal, *see Commonwealth v. Miller*, 1626 EDA 2014 (Pa. Super. filed Aug. 5, 2015) (unpublished memorandum decision), and the Pennsylvania Supreme Court denied allowance of appeal. *See Commonwealth v. Miller*, 494 EAL 2015 (Pa. filed Feb. 1, 2016). Miller did not seek review in the United States Supreme Court. At trial, sentencing, and on direct appeal, Miller was represented by Samuel C. Stretton, Esquire.

On December 20, 2016, Miller, represented by Cheryl J. Sturm, Esquire, filed a timely PCRA petition and, on December 22, 2017, Miller filed an amended petition, alleging after-discovered evidence that would demonstrate the victim, Kimble, had a firearm on the night of the altercation. The Honorable Steven R. Geroff granted an evidentiary hearing, which was held on May 10, 2018, May14, 2018, and December 7, 2018.

At the PCRA hearing, trial counsel, Attorney Stretton, testified regarding an alleged conversation he had with Gary Silver, Esquire, the attorney representing prosecution witness Wiair Hand, who had been charged with illegal possession of a firearm on the night of the murder. This Court summarized the salient testimony as follows:

> According to trial counsel, Attorney Silver indicated that his client, Hand, lied when he testified at [Miller's] trial that he was in possession of [Jamal] Chapman's handgun before the shooting and that the victim[, Maurice Ronnie Kimble,] was unarmed when he was shot. Instead, trial counsel testified that Attorney Silver shared that Hand actually possessed the victim's handgun. However, at the PCRA hearing, trial counsel became confused when initially reporting this statement. Trial counsel stated that "Mr. Silver told me that his client[, Hand] had misled the court

and that it was his gun.  The client, Mr. Hand's gun.  Sorry." [N.T.] PCRA Hearing, 5/10/18, at 43-44.  Trial counsel indicated that Attorney Silver shared that Hand had admitted that he [re]moved the handgun from the victim's body after [Miller] shot the victim and [Hand] disposed of the firearm in some weeds to make it look like the victim was unarmed at the time of the shooting.[1]

Acknowledging that he had become confused on Hand's alleged statement to Attorney Silver, trial counsel explained that he has litigated almost 1,000 cases since [Miller's] trial and he does not remember names well.  Trial counsel candidly admitted that he would get names "mixed up in [his] head sometimes" and conceded that there was a possibility that his cases could "get conflated over the years." *Id.* at 16, 44-45.

At the time of [Miller's] trial, trial counsel believed he was bound by attorney-client privilege to keep Attorney Silver's statement confidential, as trial counsel had served as Attorney Silver's counsel in an unrelated matter years before this case.  However, trial counsel revealed Attorney Silver's communication to assist [Miller] in seeking collateral relief as he now takes a "different position" on this ethical question.  *Id.* at 43-44, 79-80, 113.

[Miller] presented the testimony of Attorney Silver, who denied telling trial counsel that Hand picked up the victim's firearm and disposed of it after the shooting.  Attorney Silver adamantly claimed he did not make this statement, indicating[,] "I would remember that." *Id.* at 109-10.

In his PCRA petition, [Miller] claimed trial counsel was not bound by the attorney-client privilege and could have used Attorney Silver's statement to show that a witness had committed perjury at [Miller's] murder trial.  As noted above, [Miller] characterized his claim in terms of "new evidence" that could be presented at a new trial and did not claim trial counsel was ineffective in failing

---

[1] At trial, Hand testified that, while sitting in the dining area of the restaurant, he did not extract or display the revolver to anyone.  **Nor did the victim ever have that gun in his possession that night**.  *See* N.T. Trial, 10/23/13, at 12.  Hand further testified that, when he saw Miller lift up his shirt and reveal his gun, Hand ran, at which time he still had the revolver with him.  *Id.*  Hand testified that before taking the gun out and discarding it in the weeds, he—from the time they were seated at the table, throughout walking through the breezeway and seeing Miller reveal his gun—did not display his gun in any way, shape, or form.  *Id.* at 14.

to reveal this testimony. [Miller's] PCRA counsel indicated that she had intended to call [] Hand as a witness at the evidentiary hearing but she had difficulty locating him even after hiring a private investigator. Although PCRA counsel never found Hand's address, she noted that she was able to reach him on a phone number provided by Attorney Silver. Hand told PCRA counsel that he did "not wish to be involved." *Id.* at 4-5.

*Commonwealth v. Miller*, 3358 EDA 2018, 74 EDA 2019, at 9-11, (Pa. Super. filed Apr. 17, 2020) (unpublished memorandum decision).

After the PCRA hearing, Judge Geroff stated that he believed trial counsel, Attorney Stretton, was "caught in an ethical conflict because of his representation years before of the attorney who represented [] Hand." N.T. PCRA Hearing, 12/7/18, at 5. Judge Geroff clarified, however, that he was not accusing Attorney Silver "of lying." *Id.* Instead, he was finding that when trial counsel explained what happened he believed his testimony and "at that point, he had—when all of that had developed at trial, he had an obligation to the client he was representing in a homicide case; that was more important than the obligation he had to his former client, [Attorney] Silver." *Id.* at 5-6.

Judge Geroff granted Miller a new trial, finding trial counsel was ineffective. The Commonwealth appealed and Miller cross-appealed. On appeal, this Court disagreed with Judge Geroff's finding of ineffectiveness, vacated the order granting a new trial, and remanded for consideration of

Miller's four remaining claims that Judge Geroff had summarily denied.[2]  We determined that the record established that Attorney Silver would not have been willing to testify for the defense because he denied that he told trial counsel that Hand had committed perjury at Miller's trial.  **See Miller**, **supra** at 16 (quoting **Commonwealth v. Wantz**, 84 A.3d 324, 331 (Pa Super. 2014) ("To satisfy the prejudice prong of this test when raising a claim of ineffectiveness for the failure to call a potential witness at trial, our Supreme court has instructed that the PCRA petitioner must established that: (1) the witness existed; (2) the witness was available to testify for the defense; (3)

---

[2] Those claims are:

> I.    Whether [Miller] was denied effective assistance of counsel arising from a failure to investigate and find Anthony Bright?
>
> II.    Whether [Miller] was denied effective assistance of counsel arising from the failure to investigate and find [the victim's] criminal record?
>
> III.    Whether [Miller] was denied effective assistance of counsel arising from the failure to investigate viewed cumulatively?
>
> IV.    Whether [Miller] was denied due process when the Commonwealth failed to correct the false testimony of Wiair Hand?

**Commonwealth v. Miller**, **supra** at 13 (citing Miller's Brief on Cross-Appeal, at 15-16).  Specifically, our decision stated that on remand, the PCRA court was to "review the four claims raised in [Miller's] cross-appeal that were not fully evaluated by Judge Geroff."  **See Miller**, **supra** at 18-19.  The PCRA court made no factual findings with respect to the remaining claims Miller had raised in his PCRA petition, and simply stated at the hearing, "[I]f all I had to decide were the other issues in the case, I would have denied the petition." N.T. PCRA Hearing, 12/7/18, at 3-4.

counsel knew, or should have known, of the existence of the witness; (4) th**e witness was willing to testify for the defense**; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.")) (emphasis added).  Further, this Court emphasized that the PCRA court failed to explain how trial counsel could have "used" Attorney Silver's statement to Miller's advantage.

> Even if Attorney Silver was willing to testify for the defense, trial counsel could not ask Attorney Silver to testify to Hand's out-of-court statement (which would constitute inadmissible hearsay), could not admit Hand's prior inconsistent statement to Attorney Silver as substantive evidence, and would be limited to using the statement to impeach Hand.

*Miller, supra* at 16-17.  On December 22, 2020, the Pennsylvania Supreme Court denied Miller's petition for allowance of appeal.  *Commonwealth v. Miller*,  223 EAL 2020 (Pa. filed Dec. 22, 2020).

On April 18, 2021, Miller, through counsel, filed a "Brief on Remand," which the Honorable Scott DiClaudio reviewed as an amended PCRA petition. On August 11, 2021, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.A.P. 907.  On August 17, 2021, Miller filed a response to the Rule 907 notice, arguing the Rule 907 notice was procedurally defective because "it does not appear to be the product of independent judicial review."   Miller's Response to Rule 907 Notice, 8/17/21, at 2.  On October 6, 2021, the PCRA court denied Miller's petition.  The docket indicates the PCRA petition was dismissed "due to [l]ack of [s]tanding." *See* Criminal Docket, CP-51-CR-0011245-2012, at 16.

Miller filed this timely appeal. Both Miller and the PCRA court have complied with Pa.R.A.P. 1925.[3] Miller raises the following issues for our review:

1. Whether the PCRA court's decision acting on the Superior Court's remand order is procedurally deficient because it does not appear to be the product of independent judicial review of the totality of the evidence?

2. Whether the PCRA court's decision is defective because it did not decide all of the issues before the court on remand?

3. Whether trial counsel was constitutionally ineffective for failing to investigate, find, and introduce into evidence the decedent's conviction for armed robbery based on a misunderstanding of the law set forth in [*Commonwealth v.*] *Amos*[, 284 A.2d 748 (Pa. 1971)]?

4. Whether the PCRA court erred when it did not find that Miller was denied due process when the prosecution failed to correct the false testimony of Wiari Hand?

5. Whether the PCRA court erred in not finding a *Brady*[4] violation based on the failure on the part of the prosecution to correct the false testimony of Wiari Hand?

6. Whether the PCRA court erred in not holding an evidentiary hearing on the claim that trial counsel was ineffective for failing to investigate, interview, and call Anthony Bright as a defense witness?

Appellant's Brief, at 2.

_____

[3] Miller's Rule 1925(b) statement consists of nineteen pages and reads more like a brief than a Rule 1925(b) statement.

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

We begin by noting our standard and scope of review:

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Dozier*, 208 A.3d 1101, 1103 (Pa. Super. 2019).

Miller's first two claims challenge the PCRA court's procedural disposition on remand from this Court. Specifically, Miller claims in his first issue, as he did in his response to the PCRA court's Rule 907 notice and again in his Rule 1925(b) statement, that the PCRA court's decision is "procedurally deficient" because it is not the product of independent judicial review and that the PCRA court did not address the claims this Court required it to address on remand. *See* Appellant's Brief, at 2. *See also supra* n. 2.

We note several concerns here. Foremost, Miller does not address his first issue in the Argument section of his appellate brief. Instead, his first argument is entitled "The Newly-Discovered Fact Issue," and it does not address the issues of "procedural deficiency" on remand. Miller, therefore, has abandoned this claim on appeal. *See* Pa.R.A.P. 2119(a); *Commonwealth v. McGill*, 832 A.2d 1014, 1018 n.6 (Pa. 2003) (finding waiver where appellant abandoned claim on appeal); *Commonwealth v. Love*, 896 A.2d

1276, 1287 (Pa. Super. 2006) (appellate court required to deem abandoned those issues identified on appeal, but unsupported by argument in brief). To further confuse matters, Miller conflates the issue of after-discovered evidence, **see** 42 Pa.C.S.A. § 9543(a)(2), with the issue of a newly-discovered fact—an exception to the one-year time requirement for the filing of a PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1)(ii). **See** Appellant's Brief, at 12. **There is no issue of PCRA timeliness here**. However, for the reasons stated below, we do not find that any of these errors affected PCRA counsel's effectiveness, the PCRA court's merits review, or this Court's review. **Cf. Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021) (remand may be proper in certain cases where ineffectiveness claims are raised on appeal in first instance).

Additionally, our review indicates at least three statements on the part of the PCRA court that we are unable to reconcile.

First, the PCRA court states: "By order dated August 11, 2021, the parties were given notice of this court's intent to dismiss the PCRA Petition without a hearing pursuant to Pa.R.Crim.P. 907. **No response to the notice was filed**." Pa.R.A.P. 1925(b) Opinion, 7/25/22, at 2. This is incorrect.

As noted above, Miller filed a comprehensive Rule 907 response on August 17, 2021, within the required 20-day time period. In that response, Miller argued that the Rule 907 notice was procedurally defective because "it does not appear to be the product of independent judicial review." **See** Miller's Response to Rule 907 Notice, 8/17/21, at 2.

Second, the PCRA court refers to findings in the record that this Court is unable to locate. Here, the PCRA court provided the following Rule 907 notice:

> You are hereby advised that in twenty (20) days from the date of this NOTICE, your request for post[-]conviction relief will be denied/dismissed without further proceedings. No response to this Notice is required. If, however, you choose to respond, your response is due within twenty (20) calendar days of the above date. The reason for denial is as follows:
>
> _X_ (1) The Court has determined that the issues raised in the Amended Post Conviction Relief Act petition are without merit.

Rule 907 Notice, 8/11/21. As stated above, Miller objected to the "checklist" form of the PCRA court's Rule 907 notice in his response to the Rule 907 notice. And, although the PCRA court states that it placed its reasons for finding the claims in the PCRA meritless on the record on August 4, 2021, **prior to the August 11, 2021 dismissal**, *see* Rule 1925 Opinion, *supra* at 12, our review of the record indicates only that a PCRA hearing was **scheduled** for August 4, 2021, **but never held**. The docket entry for August 4, 2021 reads: "PCRA Continued for Formal Dismissal after 907 Notice[.]" What followed was the court's Rule 907 "checklist" notice on August 11, 2021, and a subsequent order dismissing the PCRA petition on October 6, 2021.[5]

---

[5] We are unable to locate this order in the record. It is listed in the criminal docket at CP-51-CR-0011245-2012, at page 16, and the entry reads: "PCRA Petition Dismissed due to Lack of Standing[.]" In his notice of appeal, Miller does not attach a copy of an October 6, 2021 order and, instead, attaches a copy of that docket sheet.

- 10 -

Third, PCRA court misconstrues our Supreme Court's ***Bradley*** decision with respect to Rule 907 "checklist" notices. In its opinion, the PCRA court states that "[s]uch 'checklist' notices were not held to be insufficient by the Pennsylvania Supreme Court until October 20, 2021," subsequent to the court's August 11, 2021 Rule 907 notice. However, in ***Bradley***, the Court stated:

> [W]hile Rule 907 requires the PCRA court to provide the reasons for dismissal, often, as is the case here, a court may give only a cursory statement, including merely checking a form box indicating that the claims were "without merit," with nothing more. Such a summary statement would challenge even a seasoned attorney to understand why a petition was being dismissed, let alone a *pro se* petitioner.

261 A.3d at 399. In a footnote, the Court emphasized: "**Indeed, this check-the-box approach is impermissible under our decision in *Commonwealth v. Williams*, 782 A.2d 517, 527 (Pa. 2001)** (holding that the PCRA court must provide "sufficiently specific reasons for the disposition such that the potential for amendment may be reasonably evaluated by counsel")." ***Bradley***, ***supra*** at 399 n. 15 (emphasis added).

Despite these oversights, we find it unnecessary to remand for further proceedings. Contrary to Miller's assertion, Judge DiClaudio did comply with this Court's remand order and addressed, at length, the four issues Judge Geroff summarily dismissed. ***See supra*** n. 2.

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose

- 11 -

would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted). *See also* Pa.R.Crim.P. 907(1). As the PCRA court's opinion indicates, and our review of the record confirms, the PCRA court considered, and correctly disposed of, each issue this Court ordered it to review on remand.

Miller first claims that trial counsel was ineffective for failing to investigate and find putative witness Anthony Bright. He asserts Bright would have testified that he arrived at the scene of the shooting just in time to see Hand take the gun from the victim, supporting Miller's self-defense claim.

Trial counsel is presumed to be effective, and the appellant has the burden of proving ineffectiveness. *Commonwealth v. Howard*, 749 A.2d 941, 946 (Pa. Super. 2000).

To carry this burden, the appellant must plead and prove: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987)). [] Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all *Pierce* prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails

under any required element, we may dismiss the claim on that basis.

***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (citations modified); ***see also Commonwealth v. Lesko***, 15 A.3d 345, 380 (Pa. 2011) (when evaluating ineffectiveness claims, judicial scrutiny of counsel's performance is highly deferential).

In order to satisfy the prejudice prong of the ***Pierce*** test when raising a claim of ineffectiveness for the failure to call a potential witness at trial, a PCRA petitioner must established that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. ***Commonwealth v. Wantz***, 84 A.3d 324, 331 (Pa Super. 2014).

First, even assuming the first three prongs were met, ***see Wantz***, ***supra***, Miller suffered no prejudice as this proposed testimony would be unlikely to change the outcome of the case. Seven witnesses testified that they did not see the victim with a gun; two of those witnesses were servers at the restaurant, and one was a patron, none of whom had any bias or motive to lie. The jury found those witnesses credible. Second, even assuming this proposed testimony by Bright is true, that does not establish the core of Miller's claim—that **Miller** saw the victim with a firearm. Bright did not witness the shooting, and thus his proposed testimony would not have supported

Miller's claim that Miller feared for his life. We agree with Judge DiClaudio's assessment that this claim of ineffectiveness is meritless.

Next, Miller claims trial counsel was ineffective for failing to investigate and find the victim's criminal record—in particular, a prior robbery conviction. When self-defense is properly at issue, evidence of the victim's prior convictions involving aggression may be admitted, if probative, either (1) to corroborate the defendant's alleged knowledge of the victim's violent character, to prove that the defendant was in reasonable fear of danger, or (2) as character/propensity evidence, as indirect evidence that the victim was, in fact, the aggressor. *Commonwealth v. Mouzon*, 53 A.3d 738, 740-41 (Pa. 2012).

Here, Miller presented no evidence that he knew of the victim's prior conviction. Miller and the victim did not know one another. Further, the evidence established that the victim and his friends were leaving the establishment when Miller followed them and made comments. Miller admitted to being the first to display a firearm, and all other evidence indicated that Miller was the aggressor. As a result, evidence of the victim's prior record would not have been admissible under *Mouzon*. Because his underlying claim is meritless, trial counsel was not ineffective. *Pierce*, *supra*. *See also Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010) (no prejudice from counsel's purportedly deficient performance unless reasonable probability that verdict would have been different, and probability must be sufficient to undermine confidence in outcome of proceedings).

In his third claim, Miller argues trial counsel's failure to investigate "cumulatively" amounted to ineffective assistance of counsel. This claim, properly considered and disposed of by Judge DiClaudio on remand, was not argued in Miller's appellate brief. Thus, this issue has been waived. See Pa.R.A.P. 2119(a); *see also McGill*, *supra*; *Love*, *supra*.

Finally, Miller claims he was denied due process when the Commonwealth failed to correct Hand's alleged false testimony[6] regarding Hand's prior record and that this was a *Brady* violation. Miller contends the following testimony should have been corrected by the prosecution:

> Q: You pled guilty to violation of the Uniform Firearms Act, a handgun, the gun that was found in the weeds that day?
>
> A. Yes, sir.
>
> Q: **Had you ever been arrested before that day?**[7]
>
> A: No, sir.

N.T. Trial, 10/23/13, at 6-7. PCRA counsel provided the court with a docket from the Delaware County Court of Common Pleas, demonstrating Hand had been arrested and arraigned on 34 counts, including robbery and related offenses. Arrest on those counts, however, did not occur until August 15,

---

[6] To clarify, this alleged perjured testimony does not refer to trial counsel's confused testimony regarding Attorney Silver's statement about Hand lying about whose firearm he possessed and threw into the weeds. *See supra* at 2-3. This Court has addressed this issue and it has been finally litigated.

[7] "That day" refers to the date of the crime, June 10, 2013.

2012, two months after the date of the instant offense, June 10, 2013, to which the prosecutor's question referred.

Miller argues that Hand was "the crucial witness for the prosecution because he testified that the [victim] was unarmed[,] thus contradicting [] Miller's theory of self-defense[,]" and there was a "reasonable probability that but for the perjury, [Miller] would not have been convicted." Appellants Brief, at 24-26. Miller cites to and **Napue v. Illinois**, 360 U.S. 264 (1959), and **Haskell v. Superintendent**, 866 F.3d 139 (3d Cir. 2017) to support this claim.

In **Haskell**, the Court held a prosecutor violates a defendant's constitutional rights when the prosecutor fails to correct witnesses' testimony, known by the prosecutor to be false, and there was "a reasonable likelihood that [the] false testimony could have affected the judgment of the jury." **Id.** at 146, 152.

In **Napue**, the witness, who had been serving a 199-year sentence for the same murder for which the petitioner had been on trial, falsely testified that the prosecutor did not offer the witness a reduction in sentence in exchange for the witness' testimony. 360 U.S. at 265. There, the United States Supreme Court determined that the failure of a prosecutor to correct the testimony of the witness, which he knew to be false, denied the petitioner due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. **Id.** at 265, 271.

To establish a *Brady* violation, a defendant must show: (1) the Commonwealth suppressed evidence either willfully or inadvertently; (2) the evidence at issue is favorable to the defendant; and (3) the evidence was material. *Commonwealth v. Chambers*, 807 A.2d 872, 887 (Pa. 2002), citing *Brady*, *supra* at 87. Evidence is favorable to the defendant where, "if disclosed and used effectively, it may make the difference between conviction and acquittal." *Chambers*, *supra* at 888. Further, "when the reliability of a witness may be determinative of guilt or innocence, non-disclosure of evidence effecting that witness' credibility runs afoul of [*Brady's*] disclosure requirement." *See Commonwealth v. Moose*, 602 A.2d 1265, 1272 (Pa. 1992).

Here, Miller's argument fails on several grounds. First, as Judge DiClaudio explained, Hand's response to the prosecutor, that he had never been arrested prior to "that day," meaning June 13, 2012, was not false. Though noting the interpretation may be subjective, the statement, in fact, "was not false." *See* Rule 1925(a) opinion, *supra* at 16. Further, Miller's statement that Hand was a critical witness for the prosecution misapprehends the record. Hand was not an eyewitness. The eyewitnesses presented by the Commonwealth—restaurant employees and patrons, as well as the victim's friends—testified that as the victim and his friends were leaving the restaurant, Miller went after the victim, lifted his shirt to expose a handgun, and then drew the weapon and fired at the victim twice, firing twice more after the victim had fallen to the ground. *See* N.T. Trial, 10/23/13, at 9-11, 70-82,

- 17 -

102-10, 117, 120, 162-64, 200-02, 218-20, 225-28. Moreover, the record shows that Miller conceded that he was the aggressor, that he followed the victim out of the restaurant, threw the murder weapon in a sewer, fled the scene in a car, and then took a bus to Los Angeles the next morning upon learning he was wanted for murder. *Id.* at 143-46, 168-76, 180-81. In sum, not only has Miller failed to establish that Hand's testimony was perjured, *Haskell*, *supra*, but Miller's argument that his conviction was achieved through the use of materially false or perjured testimony is belied by the overwhelming evidence of record. Thus, the PCRA court correctly determined there was no *Brady* violation here.

After our review of the record, we conclude the PCRA court properly considered the remanded issues, and Miller's claims to the contrary are unfounded. Further, we agree with the PCRA court's determination that Miller's claims are meritless. The PCRA court's determination is supported by the evidence of record, and no legitimate purpose would be served by further proceedings. *Dozier*, *supra*. Accordingly, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2023

- 18 -